# HENRY STUART *et al.*

*v.*

# BOARD OF SUPERVISORS OF LA SALLE COUNTY *et al.*

1. CHANCERY JURISDICTION—*interfering with criminal administration.* A court of equity, from its nature and organization, has no jurisdiction to stay or prevent the execution of a judgment in a criminal case.

2. A court of equity has no jurisdiction to enjoin the use of a county jail for the confinement of prisoners charged with or convicted of crime, on the ground that it is a nuisance and endangers the health of its inmates, there being an ample remedy at law.

3. JAILS—*must be kept in good condition.* The word "sufficient" in the first section of the act relating to jails and jailors, applies as well to the good condition of jails as to their repair. If filthy, offensive and unhealthy, they can not be said to be in a sufficiently good condition.

4. SAME—*separation of males and females, etc.* A county jail so constructed that it is impossible to separate male and female prisoners, or minors from old and hardened offenders, or those charged or convicted of misdemeanors from those charged or convicted of felonies, except by placing them in cells, is not in compliance with the statute.

5. SAME—*treatment of prisoners.* The law presumes all persons innocent until convicted of crime, and it is intended that they shall be treated as such until convicted, and, even after conviction, that they shall be treated humanely.

6. SAME—*when sheriff may remove prisoners to another jail.* Where the grand jury report that a county jail is in an unfit condition to confine prisoners, and dangerous to their health, caused by the proper authorities neglecting to provide sufficiently good and healthy accommodations, and for the separation of prisoners, it is the duty of the sheriff to remove his prisoners to the nearest sufficient jail.

7. SAME—*power of circuit court.* The statute has conferred ample power on the circuit court to see, and it is made its duty to know, that prisoners are humanely treated, and to make and enforce all orders necessary to that end, even to their removal to another jail until the county authorities shall provide a suitable place for their confinement.

342        STUART *et al. v.* LASALLE COUNTY *et al.*        [Sept. T.

Opinion of the Court.

WRIT OF ERROR to the Circuit Court of La Salle county; the Hon. EDWIN S. LELAND, Judge, presiding.

This was a bill in chancery, by Henry Stuart and James Kane, against the Board of Supervisors of La Salle county, and Arthur C. McIntire, sheriff of the same county. The substance of the bill and the proceedings thereon are given in the opinion of the court.

Mr. B. F. LINCOLN, and Mr. H. T. GILBERT, for the plaintiffs in error.

Mr. G. S. ELDRIDGE, and Mr. HENRY MAYO, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Complainants were indicted, and on the 21st of June, 1876, tried and convicted of the crime of petit larceny, and the court sentenced them to thirty days' confinement in the county jail, and they were confined therein when this bill was filed. The bill alleges that the county jail is very filthy and unhealthy, and wholly unsuitable to be used for the confinement of human beings, and confinement is injurious to health, and that complainants' health has been impaired by being confined therein, and that they fear, and have reason to fear, that longer confinement therein will irreparably impair their health by reason of the unhealthy condition of the jail.

The bill embodies a portion of a report of the grand jury of the county. It is this:

"We further report that the jail is situated in the south part of the basement of the county court house; that the basement is built of stone, and is about eight feet in height, four or five feet of which is below the ground; that the jail consists of a hall, about eight and one-half feet in width and some forty feet in length, extending across the whole width of the basement, and is lighted by two small grated windows, the sills of which are on a level with the surface of the ground; that the two windows afford the only means of admitting the sunlight

and air into the jail; that the court house is surrounded on all sides by high buildings, so that there is not at all times a free circulation of air around even the outside of the basement; that the two windows are placed, respectively, one to the east and the other to the west end of the hall, and are so small and near the ground that the light of the sun can only reach them during a short time in the morning and evening; that in front of each window there is a pen, or crib, made of boards, so ingeniously constructed as to effectually exclude both the circulation of fresh air and sunshine from the neighborhood of the jail windows; that the board pens, or cribs, combined with the beautiful and economical vaults erected on either side of the court house, close to the jail windows, form a complete and perfect protection from all the influence of fresh air and sunshine; that the sleeping rooms of the prisoners consist of six small cells, in size about four feet wide and five feet long, adjoining the north side of, and opening into, the hall by grated doors, which are tightly closed during the night, from which cells daylight and fresh air are partially prohibited; that the prisoners are provided with no beds except bunks and blankets; that the floors of the hall and cells consist of a stone pavement, resting upon the ground; that the water and moisture from the earth around the jail soak through them and keep the rooms of the jail constantly damp and musty, although every possible effort is made by the janitor to keep them dry; that, in hot weather, the rooms of the jail would absolutely swarm with bugs and other loathsome vermin, were it not for the incessant efforts of the janitor with his whitewash brush. The air of the jail is so bad as to almost stifle the breath of a person just entering it from the fresh air outside, and we were informed that the jail is so unhealthy that not infrequently robust and healthy persons, after a short confinement in the jail, have to be removed on account of sickness contracted therein.

"We unhesitatingly say that the jail is wholly unfit to confine a human being in even for one night, and that it is abso-

lutely inhuman to confine any person in the La Salle county jail for any length of time.

"Yet, in this small, dirty and unhealthy jail, all of the prisoners of La Salle county, numbering sometimes more than thirty, have to be crowded and confined. This small hall affords the only room in which the prisoners may wash, eat, sit or exercise, and in the hall they are obliged to attend to all the calls of nature.

"After a careful examination, we are obliged to say that it is absolutely cruel and inhuman to confine a human being in the present La Salle county jail for any length of time."

Complainants aver that the above statements in the report of the grand jury in regard to the jail are substantially true, and that, situated as it is, said jail can not possibly be kept in such condition that persons confined therein will not be injured in their health by reason of their confinement therein.

Complainants aver that said La Salle county contains over 60.000 inhabitants, and is very wealthy and able to provide a suitable jail, yet the board of supervisors, although having for a long time known of the unfitness and unhealthfulness of said jail, have neglected to provide a suitable jail, and will neglect to do so for a long time to come, unless restrained from using said jail.

Complainants aver that said jail is a public nuisance, because injurious to the health of persons confined therein, and because all classes of prisoners are confined in the same room.

Complainants show that the board of supervisors submitted the question as to whether a new jail should be built to the people, who voted against it.

The bill prayed an injunction against the use of this jail in which to confine prisoners.

These were the material averments of the bill, and to it defendants filed a demurrer, which the court sustained, and dismissed the bill, and complainants prosecute this writ of error and ask a reversal.

In support of the decree, it is insisted that a court of equity has no jurisdiction to grant an injunction to stay or prevent

the execution of a sentence in a criminal case. To grant this injunction, and prevent the sheriff from confining plaintiffs in error in the county jail in accordance with the terms of the sentence, would be an unprecedented interference by a court of chancery with administration of criminal justice. No precedent for such relief has been referred to, and we believe none can be found.

Prior to the reign of Richard II, and long after, the chancellor entertained jurisdiction to restrain persons from committing *quasi* criminal offenses and acts of violence. He also heard such cases and rendered decrees. But it was always averred, that, by reason of combination or the power of the party threatening or doing the wrong, he had power to prevent or pervert the administration of justice in the common law courts. But when the state of society became more quiet and orderly, this jurisdiction was abandoned, and has never since been claimed or exercised. Nor do we find, even in those tumultuous times, or at any period since, that the court of chancery has ever exercised a preventive jurisdiction in the administration of criminal justice, further than in some cases to require security to keep the peace, or the granting of writs of *habeas corpus.* There is not, nor from the nature and organization of the court can there be, jurisdiction to stay or prevent the execution of a judgment in a criminal case.

Again, there is a complete remedy at law in cases of this character. The tenth section of chapter 75, entitled "Jails and Jailors," provides that where there is no jail in a county, or it is insufficient, the sheriff may commit any person in his custody, either on civil or criminal process, to the nearest sufficient jail of another county, and the jailor of such other county shall receive and confine such prisoner, etc. The first section of the act provides, "that there shall be kept and maintained, in good and sufficient condition and repair, a common jail in each county within this State, at the permanent seat of justice for such county."

It is obvious to our minds, that to permit a jail to remain filthy, offensive or unhealthy, is not to keep it in sufficiently

good condition, nor is it such a prison as the statute requires. The words "good condition," in this connection, do not merely refer to its security, but to its sanitary condition, and its capacity to render prisoners reasonably comfortable. It is impossible to say it is in good condition when it is filthy and unhealthy. It would be a perversion of language to say, that because it was in a condition to safely keep prisoners, it was therefore in a good condition. The language employed is broader and more comprehensive, and manifestly refers not only to the secure condition of the jail, but its being made reasonably comfortable, healthy and cleanly. From the report of the grand jury, this jail entirely fails in this regard.

Again, we understand, from the report of the grand jury, that the prisoners can not be separated, as required by the eleventh section of the statute. It may be, that debtors and witnesses may not be confined literally in the same room with prisoners committed for crimes; male and female prisoners may be nominally in different apartments; minors kept in cells separated from notorious offenders and those convicted of infamous crimes or felonies; and persons charged with or convicted of offenses not infamous, may, in name, be separated from those charged with or convicted of infamous crimes—yet it must be by mere grated doors, and if so, the spirit of the statute is violated. If such is the fact, then women would be liable to the same insult and ribaldry as though the prisoners could mingle without restraint, and the tender boy would be virtually subjected to the same baleful influences of the hardened and depraved, as if left unrestrained in the same room. In this respect the jail is not sufficient, and falls far short of what the statute requires.

We must suppose the citizens of the county are not informed of the true condition of this jail, or they would not cease in their efforts until the evil should be corrected. In a large, populous and wealthy county like this, whose people are noted for their intelligence, culture, thrift and enterprise in pushing forward every movement calculated to elevate and advance the interests of society, we must believe either that the people are

wholly misinformed as to the true condition of the jail, or the grand jury, in their report, have greatly overdrawn the description.

The law has provided the most ample and obvious means to secure prisoners from oppression and wrong. The law presumes all persons innocent until convicted of crime, and it is intended that they shall be treated as such until convicted, and even after conviction that they shall be treated humanely by those intrusted with their custody and imprisonment. To insure such treatment, the 26th section makes it the duty of the grand jury, at each term, to examine and report to the court whether any of the provisions of the act have been violated or neglected, and the cause of such violation or neglect. Here, the grand jury have reported that the provisions of the first section have been neglected, and that the neglect is caused by the proper authorities not providing sufficiently good and healthy accommodations for the prisoners, and for the separation of prisoners, as required by the eleventh section of the statute. On this report, we have no doubt that, under the tenth section, it would be the duty of the sheriff to remove the prisoners to the nearest sufficient jail; and on application to the judge, under the twenty-eighth section, he would order, and, if necessary, compel, the jailor to so remove them.

Again, this last section expressly makes it the duty of the circuit court, at each term, except in Cook county, to inquire into the condition of the jail and the treatment of the prisoners, and to see that all prisoners, civil and criminal, are humanely treated, and that the keeper of the jail does not neglect any of his duties under the act, and the court is required to make all necessary orders in the premises against the keeper of the jail, and to enforce the same.

This section confers on the circuit court ample power to see, and it is made his duty to know, that the prisoners are humanely treated, and to make and enforce all orders necessary to that end, even to their removal to another jail until the county authorities shall provide a suitable jail for their confinement. No one, it seems to us, could say, that if the report

of the grand jury is true, the prisoners are humanely treated, or can be, in this jail.

The fourteenth section provides, that if sickness shall break out in any jail, which may, in the opinion of the county board, endanger the lives or health of the prisoners to such an extent as to render their removal necessary, they may be removed to some other place in the county, or to another jail in a different county, thus adding another agency by which prisoners shall be secure against confinement that may endanger their lives or health. This entire act breathes the spirit of humanity, free from harshness and disregard for the health of those accused or even convicted of crime.

The law having afforded an ample remedy, there can be no pretense for the interference of a court of equity, and the demurrer was properly sustained and the bill dismissed, and the decree must be affirmed.

*Decree affirmed.*