| 104 | 24 |
| 105 | 736 |
| 104 | 24 |
| f109 | 168 |
| ; f109 | 373 |
| 104 | 24 |
| f111 | 759 |
| 104 | 24 |
| 116 | 294 |
| 104 | 24 |
| 124 | 709 |
| 104 | 24 |
| f125 | 97 |
| 104 | 24 |
| 129 | 580 |
| f129 | 582 |

## PAULK v. MAYOR AND ALDERMEN OF SYCAMORE.

1. Courts of equity will not by injunction prevent the institution of prosecutions for criminal offenses, whether the same be violations of State statutes or municipal ordinances; nor will they, upon a petition for an injunction of this nature, inquire into the constitutionality of a legislative act, or the validity or reasonableness of an ordinance making penal the act or acts for the doing of which prosecutions are threatened.
2. There was error in denying the injunction.

Submitted February 25, — Decided April 11, 1898.

Petition for injunction. Before Judge Smith. Irwin county. February 4, 1898.

*W. A. Hawkins* and *Thomson & Whipple*, for plaintiff.
*J. H. Martin*, for defendant.

FISH, J. The plaintiff in error brought his petition to enjoin criminal proceedings against him and his employees, under the provisions of the charter of Sycamore, prohibiting and making penal the sale of intoxicating liquors within its incorporate limits, and to enjoin similar proceedings under a municipal ordinance, prohibiting, under penalty of fine or imprisonment, the keeping of such liquors in the city for the purpose of sale or barter. He alleges that the municipal ordinance in question is void and has been repealed; that if the corporate authorities are allowed to institute and carry on the threatened prosecutions, "it will not only harass and jeopardize his personal liberty, without any lawful authority, but it will also in-

terfere with him in the enjoyment of his civil rights, break up his business and cause him to sacrifice and lose his . . . property and stock of goods, and damage him in a large amount, and all without authority and without adequate redress"; and that his damages will be irreparable.

In *Gault* v. *Wallis*, 53 *Ga.* 675, it was held that "Courts of equity have no jurisdiction to interfere with the administration of the criminal laws of the State by injunction or otherwise." And in *Phillips* v. *Mayor etc. of Stone Mountain*, 61 *Ga.* 386, it was held: "No injunction, or order in the nature of an injunction, will be granted to restrain proceedings in a criminal matter." In *Garrison* v. *City of Atlanta*, 68 *Ga.* 64, where these decisions were followed, the principle is reaffirmed in the following language: "Injunction will not be granted to restrain a criminal proceeding." These decisions seem to be decisive of the questions raised in the present case; and but for a later decision of this court, which is invoked in behalf of the plaintiff in error, and which we shall presently consider, we should not deem it necessary or profitable, in this opinion, to do more than cite and follow these adjudications. The case in the 61 *Ga.* 386, is especially in point, owing to its similarity to the case now under consideration. In that case, certain retail liquor-dealers sought to enjoin prosecutions under a municipal ordinance which was passed after they had obtained their licenses to sell, on the ground that the ordinance was void and materially restricted their business. This court, speaking through Bleckley, J., who delivered the opinion, said: "Whatever may be the infirmities of the penal ordinances of Stone Mountain, an injunction in the present case was properly denied. If unlawful convictions take place before a municipal court, reversal can be had in the superior court, as a court of law, by certiorari. This is a plain and adequate remedy, and a court of equity need not and can not interfere. Chancery takes no part in the administration of criminal law. It neither aids the criminal courts in the exercise of jurisdiction nor restrains or obstructs them." The principle upon which these decisions are founded has long been well settled by a great current of authority, both in this country and in England. In Re Saw-

yer, 124 U. S. 200, it was reaffirmed by the Supreme Court of the United States in the most emphatic terms. The first headnote in that case is, "A court of equity has no jurisdiction of a bill to stay criminal proceedings." And in the opinion of the court it is said : "The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of the rights of property. It has no jurisdiction over the prosecution, punishment, or pardon of crimes or misdemeanors, or over the appointment or removal of public officers. To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, or for the removal of public officers, is to invade the domain of courts of common law, or of the executive and administrative department of the government." Further on, in the same opinion, after stating that "The modern decisions in England, by eminent equity judges, concur in holding that a court of chancery has no power to restrain criminal proceedings, unless they are instituted by a party to a suit already pending before it, and to try some right that is in issue there," and that "Mr. Justice Story, in his Commentaries on Equity Jurisprudence, affirms the same doctrine," it is said, "And in the American courts, so far as we are informed, it has been strictly and uniformly upheld, and has been applied alike whether the prosecutions or arrests sought to be restrained arose under statutes of the State, or under municipal ordinances." Citing, "West *v.* Mayor &c. of New York, 10 Paige, 539 ; Davis *v.* American Society for Prevention of Cruelty to Animals, 75 N. Y. 362 ; Tyler *v.* Hamersley, 44 Conn. 419, 422 ; Stuart *v.* Board of Supervisors, 83 Ill. 341 ; Devron *v.* First Municipality, 4 La. Ann. 11 ; Levy *v.* Shreveport, 27 La. Ann. 620 ; Moses *v.* Mayor &c. of Mobile, 52 Ala. 198 ; *Gault* v. *Wallis,* 53 *Ga.* 675 ; *Phillips* v. *Mayor &c. of Stone Mountain,* 61 *Ga.* 386 ; Cohen *v.* Goldsboro Commissioners, 77 N. C. 2 ; Waters Peirce Oil Co. *v.* Little Rock, 39 Ark. 412 ; Spink *v.* Francis, 19 Fed. Rep. 670, and 20 Fed. Rep. 567 ; Suess *v.* Noble, 31 Fed. Rep. 855." To this formidable and strong array of authorities we might ourselves add a number of more recent decisions, to the same effect, by our American courts, but we do not deem it necessary to do so.

Counsel representing the plaintiff in error, recognizing the fact that the three Georgia decisions that we have cited, particularly the one rendered in the 61 *Ga.*, in the Stone Mountain case, are against their contentions, rely upon the ruling of this court in *City of Atlanta* v. *Gate City Gas Light Co.*, 71 *Ga.* 106; and considering the principle announced in the fifth headnote to that case simply as an abstract proposition, applicable to all cases in which some sort of a property right may be injuriously affected by a criminal prosecution, we can understand the confidence with which they invoke that decision in behalf of their client.　But the principle there announced is to be considered and applied in the light of the extraordinary facts disclosed by the record and discussed in the opinion of the court in that case.　There are wide differences between that case and the one at bar.　In that case, the City of Atlanta, to use the language of the court, had "stood by and seen this company make an outlay of $140,000 in the exercise of their rights under this charter, without intimating to them that objection would be made to their use of the streets for the purposes authorized, and without the use of which their enterprise would not have been undertaken and could not be prosecuted, and without which they would lose their entire outlay and be involved in irretrievable ruin."　And then when the gas-light company was ready to begin the work of laying its mains, the municipal authorities sought to prevent it from exercising its valuable, vested corporate franchises, by first refusing to allow it permission to excavate or obstruct the streets of the city for the purpose of laying its pipes, and then threatening, under certain city ordinances, to prosecute and punish any of its agents or employees who, without such permission, should undertake to do so.　The court, after demonstrating that "the permission of the City of Atlanta was not required to enable the complainant to exercise its franchises," says, "Upon every principle of equity, this failure to notify the complainant of their intention, until this heavy expenditure had been made, would estop them.　Such conduct is fraudulent in the eye of the law, and where practiced upon an innocent party, who is seeking bona fide to carry out the provisions of its charter by availing itself of the powers and

privileges thereby granted, would, if anything could, debar them from now being heard." The court seems also to have been of the opinion that the municipal ordinances making penal the excavation or obstruction of the streets of the city, without permission of the municipal authorities, were void in so far as they affected the vested rights of the gas-light company under its legislative charter. And the court, on page 126, strikes what it appears to us is the real keynote of the case, when it says: "Where it is manifest, as in this case, that a prosecution and arrest is threatened for an alleged violation of city ordinances, for the sole purpose of preventing the exercise of civil rights conferred directly by law, injunction is a proper remedy to prevent injury to the party thus menaced." It will be seen that the distinguishing feature of that case, and the one which was successfully employed in invoking the interposition of equity, was the patent fact that the threatened prosecutions under the municipal ordinances were being used, not for the legitimate purpose of preventing the streets of the city from being unlawfully injured or obstructed, but for the purpose of destroying the valuable, vested franchises of the Gate City Gas Light Co. And equity, seeing the palpable fraud which was being perpetrated under color of what purported to be a simple police regulation, stretched forth its strong arm to prevent the irreparable damages which would ensue if it did not afford its protection to the rights which were thus imperiled. It was long ago decided that "an injunction will be granted to prevent the franchise of a corporation from being destroyed, as well as to restrain a party from violating it by attempting to participate in its exclusive privileges." Osborn *v.* U. S. Bank, 9 Wheat. 738.

We think, therefore, that the true principle which underlies the case that we have just been discussing, as we gather it from its peculiar facts and the opinion of the court, is, that when the damages would be irreparable if the threatened injury is not prevented, equity, if properly appealed to, will not permit valuable, vested corporate franchises, granted by the State, to be seriously impaired or practically destroyed by prosecutions instituted under color of municipal ordinances, which

are wrested from their legitimate purposes and fraudulently used, in a matter to which they can not apply, as a means with which to prevent the exercise of these franchises. A similar case to the one in the 71 *Ga.* is that of the Port of Mobile *v.* Louisville & Nashville R. R. Co., 84 Ala. 115, where the Supreme Court of Alabama held that, "Where a city attempts by an ordinance unlawfully to destroy the franchise of a railroad company, a court of equity will not refuse to interfere by injunction for the reason that the ordinance is quasi-criminal in character." Somerville, J., delivering the opinion of the court, said : "It can not be tolerated that a municipal corporation . . . should escape the grasp of a court of chancery, in a clear case of equitable cognizance, by the device of adding a penalty to an illegal and void ordinance." How different from such a case as the one in the 71 *Ga.* is the one at bar. Here no question as to the destruction or invasion of civil rights which had become vested under a legislative charter is presented ; and, so far as the record discloses, the municipal authorities of Sycamore are simply endeavoring, in good faith, to enforce the penal provisions of the charter and ordinance of the city, the enactment of each of which appears to have been a bona fide effort to exercise the police power, for the protection and preservation of the peace and good order of the community. The plaintiff in error, with full knowledge that the charter of the city contained a provision prohibiting the sale of intoxicating liquors within its incorporated limits, and that one of its ordinances prohibited the keeping of such liquors for sale or barter therein, after seeking and taking legal advice, deliberately purchased a stock of whisky, beer, etc., procured State and Federal licenses, opened a "store" in that city, and commenced selling his stock, in defiance of the law and the ordinance. Having voluntarily gotten himself into his predicament, he now invokes the aid of equity to extricate him therefrom, upon the plea that his business will be ruined, without authority of law, unless he is afforded this relief. He deliberately undertook to test the validity of both the local law and ordinance of Sycamore, by voluntarily and knowingly engaging in the business which they prohibited. He has ample opportunity to

make this test in the courts having jurisdiction over criminal matters, and a court of equity will not invade their domain in his behalf.

A case which is almost the exact counterpart of this one is that of Burnett v. Craig, 30 Ala. 135, in which there was a bill for injunction which alleged that the town council of Cahaba had passed an ordinance fixing a license for retailing within its incorporate limits; that the complainant had obtained a State license, and, acting upon legal advice that the ordinance was illegal, had opened a store in that town and commenced retailing spirituous liquors; that he was thereupon arrested for violating the ordinance, and fined and imprisoned; that he had instituted a proceeding, which was still pending, to test the ordinance; and that the council still threatened to fine and imprison him as long as he persisted in carrying on his business. The prayer was, that the municipal authorities be enjoined until the validity of the ordinance was determined by the legal proceedings. The bill was dismissed in the court below, for want of equity, and the case was carried to the Supreme Court, where the judgment of the lower court was affirmed, the higher court holding that "Chancery will not restrain quasi-criminal proceedings by the authorities of a municipal corporation for repeated violations of an alleged invalid ordinance." This case was subsequently referred to in Port of Mobile v. Louisville & Nashville R. R. Co., supra, as not being at all in conflict with the decision rendered in that case. The case made by the plaintiff in the court below falling within the general and well-established rule applicable to cases in which an injunction is sought to restrain criminal, or quasi-criminal proceedings, the judge committed no error in refusing to grant a temporary injunction.

Judgment affirmed.    All concurring, except Cobb, J., absent.