CHRISTIAN MOERLEIN BREWING CO. et al. v. HILL, Sol. Gen., et al.

(Circuit Court N. D. Georgia. December 24, 1908.)

1 INJUNCTION (§ 105*)—GROUNDS OF RELIEF—CRIMINAL PROSECUTIONS—INVALIDITY OF STATUTE.

Equity had no jurisdiction to restrain the officers of a state from taking steps to enforce Act Ga. Aug. 6, 1907 (Acts 1907, p. 81), prohibiting the manufacture and sale of intoxicating liquors within the state, and making the violation thereof a misdemeanor, on the ground that such act was not validly passed, and was in violation of the state and federal Constitutions; it not being shown by the bill that it was proposed by any of the defendants to take away any of complainants' property, or interfere therewith.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 179; Dec. Dig. § 105.*

Restraining criminal proceedings, see note to Arbuckle v. Blackburn, 51 C. C. A. 133.]

2. COURTS (§ 281*)—JURISDICTION—STATE AND FEDERAL COURTS.

Objections that Act Ga. Aug. 6, 1907 (Acts 1907, p. 81), prohibiting the manufacture and sale of intoxicating liquor within the state, etc., and making a violation thereof a misdemeanor, was violative of the state Constitution because its title contained two subjects, and that it was not properly passed, were matters primarily within the jurisdiction of the state courts.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 281.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. Courts (§ 282*)—Federal Courts—Jurisdiction—Federal Question.**

An objection that Act Ga. Aug. 6, 1907 (Acts 1907, p. 81), prohibiting the manufacture and sale of intoxicating liquors, etc., and making a violation thereof a misdemeanor, was violative of complainants' rights guaranteed by the federal Constitution, was available as a defense to a prosecution in the state courts for violation of the act, which could finally be determined by the United States Supreme Court on writ of error from the highest court of the state, and therefore was not ground of federal jurisdiction to restrain the enforcement of the act.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 820, 824; Dec. Dig. § 282.*

Jurisdiction of case involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore Purchasing Co. v. Boston & M. C. C. & S. Mining Co., 35 C. C. A. 7.]

Anderson, Felder, Roundtree & Wilson, Spencer R. Atkinson, and Wm. K. Miller, for complainants.

D. K. Johnson, C. D. Hill, Lowry Arnold, and Mayson & Hill, for defendants.

NEWMAN, District Judge.    On the 31st day of December, 1907, the complainants filed their bill against the defendants in the Circuit Court of the United States for the Atlanta Division of this district. The general purpose of the bill is to enjoin the enforcement of an act passed by the Legislature of the state of Georgia, and approved by the Governor on August 6, 1907, which by its terms was to take effect on January 1, 1908 (Acts 1907, p. 81). The act of the Legislature as indicated by the title is as follows:

"An act to prohibit the manufacture, sale, barter, giving away to induce trade, or keeping or furnishing at public places, or keeping on hand at places of business of any alcoholic, spirituous, malt or intoxicating liquors, or intoxicating bitters or other drinks, which if drunk to excess, will produce intoxication; to except sales of alcohol in certain cases, upon certain conditions; to provide certain rules of evidence in connection with the enforcement hereof; to prescribe penalties, and for other purposes."

The penal provision of the act is contained in section 2, as follows:

"That any person, firm or corporation who shall violate this act in any respect shall be guilty of a misdemeanor; any physician who shall issue a prescription hereunder containing any false statement shall be guilty of a misdemeanor; any druggist who shall fill any prescription for alcohol in any wise than as herein allowed, or who shall fail to file a prescription filled by him hereunder with the ordinary within the time prescribed, shall be guilty of a misdemeanor; any person who shall obtain alcohol for another in accordance with the terms hereof and who shall convert the same to any other use shall be guilty of a misdemeanor."

The allegations in the original bill are that the Christian Moerlein Brewing Company is now and has been for a number of years operating a brewery in the state of Ohio, and sells beer manufactured at said brewery in the state of Ohio and other states of the United States. That it has authority under its charter to brew and sell malt liquors, and to do and perform such other things as may be incidental thereto.

That "the Chattanooga Brewing Company is now, and has been for a number of years, operating a brewery in the state of Tennessee, and

sells beer manufactured at said brewery in the state of Tennessee, and in other states of the United States. It has the authority under its charter to brew and sell malt liquors, and to do and perform such other things as may be incidental thereto."

That "the Christian Moerlein Brewing Company is now, and has been for several years, maintaining branch offices in the city of Atlanta, where, through their agents and employés, they have sold, in large quantities, the product of their said brewery, and, in order to conduct their business in the city of Atlanta, they have acquired, by purchase or lease, warehouses, refrigerators, office furniture, bar fixtures, etc., and that said investments were and are indispensably necessary to the conduct of their business. That it has in the city of Atlanta property which it has used in the conduct of its business as aforesaid, of the value of five thousand dollars, or other large sum, besides having laid out and expended, in the prosecution of its business in advertisement, etc., five thousand dollars, or other large sum."

That "it owns a certain frame warehouse (the location of which is described), which is equipped with bottling machinery consisting of crowning and corking machines, boilers, engines, etc., beer coolers and refrigerators, of the value of one thousand dollars, or other large sum; a stable, two double wagons and harness; two single wagons and harness, and five horses, of the value of one thousand dollars, or other large sum."

That in addition to this it has leased two places, one on Decatur street, and one on Piedmont avenue, for which it is obligated to pay the sum of $125 per month each (not stating, however, when the lease expires).

That the business done in Atlanta by the Christian Moerlein Brewing Company will amount to from $40,000 to $50,000 per annum, from which complainant derives a net profit of $5,000 per annum, or other large sum.

That the Chattanooga Brewing Company is now, and has been for several years, maintaining branch offices in the city of Atlanta, where, through their agents and employés, they have sold, in large quantities, the product of their brewery, and, in order to conduct their business in the city of Atlanta, they have acquired, by purchase or lease, warehouses, refrigerators, office furniture, and bar fixtures (the value of which is not given), and that these investments were necessary in the conduct of its business. That it has expended several thousand dollars in advertising its business and building up the same, with the result that its business in the city of Atlanta will amount to about $15,000 per annum, or other large sum.

It is then alleged that the complainants have each paid a license tax of $300 to the county of Fulton, and a license tax to the state of about $200. The bill then sets out a provision of the Constitution of the state of Georgia, art. 8, § 1, that:

"There shall be a thorough system of common schools for the education of children in the elementary branches of an English education only, as nearly uniform as practicable, the expenses of which shall be provided for by taxation or otherwise."

Also article 8, § 3, as follows:

"The poll-tax, any educational fund now belonging to the state (except the endowment of, and debt due to the University of Georgia) a special tax on shows and exhibitions, and on the sale of spirituous and malt liquors, which the General Assembly is hereby authorized to assess, and the proceeds of any commutation tax for military service, and all taxes that may be assessed on such domestic animals as, from their nature and habits, are destructive to other property, are hereby set apart and devoted for the support of common schools."

That complainants relied upon said constitutional guaranty of protection when they entered the state of Georgia for the purpose of transacting their business and made the large investments as stated.

The bill then refers to the penal clause of the act of the Legislature of August 6, 1907, and alleges that they can only conduct their business through agents and employés, and that the Chief Executive of the state, and many of the defendants named in the bill, made public statements to the effect that the prohibition law, when the same went into effect, would be rigidly enforced, and that in order that violations might not be repeated, the courts would be urged to exercise their discretion and inflict, as a punishment for such violations, service in the chain gang, in lieu of any of the other lighter and less humiliating penalties authorized to be imposed by the act. In view of such threats, and notwithstanding the fact that such employés and agents had been advised that said act of the Legislature was unconstitutional and void, said agents and employés became terrorized and declined to continue after January 1, 1908, to sell the products of complainants or be in any wise connected with the prosecuting of their business in the county and state aforesaid.

It is then alleged that the property of complainants used in the conduct of its business has been greatly damaged, if not wholly destroyed, by reason of the enforcement of the prohibition law, and that much of said property can be used for no other purpose.

The bill then sets out the official authority and duties of the respective defendants.

It is then alleged that the effect of the enforcement of this act is to deprive the public school system of the state of Georgia of the sum of $200,000, and that this loss must be made up by assessment on property, and that the burden of this increase in taxes must be borne by complainants as taxpayers of the state, and is the direct result of the loss of the revenue derived from the sale of spirituous and malt liquors.

It is then alleged that section 3, art. 8, of the Constitution of the state of Georgia, hereinbefore quoted, in so far as it provides for the assessment of a special tax on the sale of spirituous and malt liquors in the state of Georgia, is mandatory and imperative, and implies an inhibition on the part of the General Assembly of the state to the exercise of any authority in respect of that subject, which would frustrate or disappoint the purpose of that provision, and, therefore, said act is contrary to the provisions of the Constitution of the state of Georgia, and is unconstitutional and void.

That the incorporation of sections 1 and 3 of article 8 of the Con-

stitution of the state of Georgia was a declaration by the people of the state, in convention assembled, of the policy of the state with reference to permission for the sale of spirituous and malt liquors within the state, and was a limitation upon the power of the General Assembly of the state, in its dealing with the subject, and the General Assembly had no power or authority to enact any law absolutely prohibiting the manufacture and sale of spirituous, malt, and other intoxicating liquors in the state of Georgia, and that the act for this reason is unconstitutional and void.

Moreover, it is alleged this provision was a recognition of the right of individuals and corporations to sell spirituous and malt liquors; and the denial of this right so guaranteed by the Constitution of the state, and upon which complainants' large investments have been made, in the passage of this prohibition law violates the Constitution of the United States, and particularly the fourteenth amendment thereof.

The bill is filed in behalf of complainants and all other persons and corporations similarly situated or affected who will become parties to the action and bear their share of the expenses thereof.

The prayers are:

(1) That this act of the General Assembly of the state of Georgia, approved August 6, 1907, be declared in violation of the Constitution of the state of Georgia, and therefore null, void and of no effect.

(2) That said act of the General Assembly be declared in violation of the Constitution of the United States, and therefore null and void, and of no effect.

(3) That a writ of injunction issue directed to each and all of the several defendants named, enjoining them, "their successors in office, their agents, their clerks, their assistants, their associates, and all other persons working with or under them, or either of them, enjoining them, and each of them from executing or serving upon your orators, their officers, agents, employés, and servants, or either of them, any summons, subpœna, writ, or warrant of any criminal or civil proceeding that may be or might be hereafter instituted against them, or either of them, for or on account of any alleged violation by them, or either of them, of any of the provisions of said act of the General Assembly, approved August 6, 1907, or from the preparation of any indictment, accusation, or warrant against your orators, their officers, agents, employés, and servants, or either of them, for or on account of any alleged violation of said act of the General Assembly of Georgia; and from arresting, taking into their custody, or restraining their liberty, or otherwise restraining or detaining your orators, their officers, agents, employés, and servants, or either of them, because of or as the result of any charge against them, or either of them, of a violation of any of the provisions of said act of the General Assembly of the state of Georgia."

They then pray for a temporary restraining order, not only against the defendants named above, but against "any official or person who shall attempt to enforce any of the provisions of the said act of the General Assembly of Georgia."

This bill was presented to one of the judges of this court on the afternoon of December 31, 1907, and application made for a temporary

restraining order, which was denied, and on the morning of January 1, 1908, an order was made declining to make an order to show cause why an injunction pendente lite should not issue. The bill remained on file, however, and on August 18, 1908, an amendment was filed in the clerk's office.

The first question made in this amendment is under the Constitution of the state of Georgia (article 3, § 7, par. 14), as follows:

"No bill shall become a law unless it shall receive a majority of the vote of all the members elected to each house of the General Assembly and it shall, in every instance, so appear on the journal."

Article 3, § 7, par. 4, of the Constitution providing that:

"Each house shall keep a journal of its proceedings, and publish it immediately after its adjournment."

It is alleged that it does not so appear on the journal of either house that a bill identical with said prohibition act received a majority of the votes of all the members of the General Assembly. Details are then given in this amendment showing wherein there was failure to comply with this article of the Constitution; that while the bill which originated in the Senate appears by the journal to have been properly passed in the Senate and properly concurred in by the house with certain amendments, when the bill went back to the Senate for concurrence in the House amendments, these amendments were not concurred in by the majority of all the members of the Senate; the contention being that this was the final passage of the bill, except for certain slight changes by the Senate in the House amendment, of the final disposition of which there is no record in the journal whatever.

The complainants in this amendment also invoke article 1, § 5, par. 2, of the Constitution of the state of Georgia, as follows:

"The enumeration of rights herein contained as a part of this Constitution may not be construed to deny to the people any inherent rights which they may have hitherto enjoyed "

—and say their rights thereunder are violated, because at the time the Constitution was adopted in 1877, the people of this state had enjoyed as an inherent right the right to make, sell, barter, give away, keep, and furnish any of such liquors, subject only to sundry statutory regulations as to the sale of such liquors in tippling houses, and that it was the intent and effect of this clause of the Constitution to inhibit the General Assembly from denying the same, complainants conceding that said Assembly has the right to regulate said rights by any regulation not destructive thereof or otherwise illegal.

Complainants further claim that it is violative of their rights under article 1, par. 12, of the Constitution of the state of Georgia, as follows:

"All men have the natural and inalienable right to worship God, each according to the dictates of his own conscience, and no human authority shall in any wise control or interfere with such right of conscience"

—because said prohibition of the manufacture, sale, keeping, or furnishing of wine for communion purposes interferes with the liberty of conscience guaranteed as aforesaid, and is hence null and void.

Complainants claim that this prohibition was not contained in the original prohibition bill, but, on the contrary, was expressly negatived therein, which negation was subsequently stricken out and said prohibition inserted in lieu thereof, and that the same forms an essential and integral part of the legislative scheme contemplated by the prohibition act, and cannot be eliminated therefrom without thereby making a new statute, which the body did not make, nor intend to make, and for this reason the act is null and void.

Complainants claim that that part of the act which deals with the furnishing of pure alcohol for medical purposes is violative of article 1, § 1, par. 2, and article 1, § 5, par. 2, of the Constitution of the state, which paragraphs are respectively as follows:

"Protection to person and property is the paramount duty of government, and shall be impartial and complete;" and

"The enumeration of rights herein contained as a part of this Constitution, shall not be construed to deny to the people any inherent rights which they may have hitherto enjoyed"

—complainants claiming it is one of the inherent rights of the people to be freely furnished with any medicament, of any nature whatsoever, which his attendant physician might, in the exercise of his professional judgment, deem necessary for the preservation or restoration of health; further, that so far as said act prohibits the filling of prescriptions by druggists who are also the prescribing physicians, the same is in violation of the fourteenth amendment to the Constitution of the United States. They further claim that this act is violative of the fourteenth amendment to the Constitution of the United States in that it makes it penal for any person within the limits of the state to sell such liquors without making it penal for any person within the limits of the state to buy such liquors.

It is also claimed that this is not a valid exercise of the police power of the state, because its aim and purpose is to prevent the drinking of intoxicating liquors to an extent productive of intoxication, but nowhere among its many penalties does it prescribe any punishment for such excessive drinking.

It is further claimed that by the second paragraph of section 5 of article 1, of the Constitution of the state of Georgia it is provided:

"That the enumeration of rights herein contained as a part of this Constitution shall not be construed to deny to the people any inherent rights which they may have hitherto enjoyed"

—complainants contending that it is an inherent common-law right of any person in the state to manufacture, sell, etc., spirituous and malt liquors, subject to the right of the state to regulate the method of the exercise of this right, this act not seeking to regulate, but to totally prohibit.

The claim that this act is not properly passed by the Legislature is again set out and much elaborated. The entire history of the bill in the Legislature is given in the amendment.

The bill was again amended on November 4, 1908, and in this amendment it is alleged that the prohibition act of the Legislature was

violative of article 3, § 7, par. 8, of the Constitution of the State of Georgia, as follows:

"No law or ordinance shall pass which refers to more than one subject matter"

—it being claimed that selling and manufacturing are, in the very nature of things, two separate and distinct subject-matters.

An additional amendment filed November 5, 1908, deals still further with the passage of the act by the Legislature, and what are claimed to be fatal irregularities in this respect being stated, in addition to what had been previously pleaded, that the provision of the Constitution of Georgia (article 3, § 7, par. 13), that "all acts shall be signed by the President of the Senate, and the Speaker of the House of Representatives"; and article 5, § 1, pars. 16 and 17, "The Governor shall have the revision of all bills passed by the General Assembly, before the same shall become laws"; and "every vote, resolution or order, to which the concurrence of both houses may be necessary, except on a question of election or adjournment, shall be presented to the Governor and before it shall take effect, be approved by him, or being disapproved, shall be re-passed by two-thirds of each house"—complainants urging that said act was not so signed by the presiding officers nor approved by the Governor, but another and different act was so signed, and still another and different act was so approved, as appears by reference to the journal of the State Legislature.

Details are then given as to the difference between the act as passed and the act as signed and approved.

Another, and last, amendment was filed by complainants on December 15, 1908, which, without stating any new grounds of attack upon the act in question, makes more specific and definite certain former allegations.

To the original bill demurrers were interposed by all the defendants, and the demurrers have been renewed to each of the amendments. The grounds of demurrer are general and specific, and go to the sufficiency of the bill as an entity to justify any equitable relief or the grant of an injunction, or as to the sufficiency of any separate and distinct part thereof to justify or authorize such relief. Argument has been had on the demurrer, and the matter submitted.

At the threshold of this case is the important question whether this is not an effort to enjoin criminal prosecution under such circumstances and of such character that a court of equity cannot and will not grant relief. The leading and most important ruling on this subject, certainly in the courts of the United States, is In re Sawyer, 124 U. S. 210, 8 Sup. Ct. 487, 488 (31 L. Ed. 402). In the opinion in that case, by Judge Gray, it is said:

"The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights or property. It has no jurisdiction over the prosecution, the punishment, or the pardon of crimes or misdemeanors, or over the appointment and removal of public officers. To assume such jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, or for the removal of public officers, is to invade the domain of the courts at common law, or of the executive and administrative department of the government.

"Any jurisdiction over criminal matters, that the English Court of Chan-

cery ever had, became obsolete long ago, except as incidental to its peculiar jurisdiction for the protection of infants, or under its authority to issue writs of habeas corpus for the discharge of persons unlawfully imprisoned. * * *

"The modern decisions in England by eminent equity judges concur in holding that a court of chancery has no power to restrain criminal proceedings unless they are instituted by a party to a suit already pending before it, and to try the same right that is in issue there. Attorney General v. Cleaver, 18 Ves. 211, 220; Turner 15 Jurist, 218; Saull v. Browne, L. R. 10 Ch. 64; Kerr v. Preston, 6 Ch. D. 463.

"Mr. Justice Story in his commentaries on Equity Jurisprudence affirms the same doctrine. Story, Eq. Jur. 893. And in the American courts, so far as we are informed, it has been strictly and uniformly upheld, and has been applied alike whether the prosecutions or arrests sought to be restrained arose under statutes of the state or under municipal ordinances."

In Hemsley v. Myers (C. C.) 45 Fed. 283–287, Circuit Judge Caldwell says:

"The bill seeks to enjoin criminal proceedings. A court of equity possesses no such power. This principle is settled by the uniform current of authorities in England for two centuries, and in this country from the foundation of its jurisprudence. The recent emphatic reaffirmances of the doctrine by the Supreme Court of the United States renders it unnecessary to do more than repeat the rule in the language of that court." Citing In re Sawyer, supra.

In Brewing Company v. McGillivray (C. C.) 104 Fed. 258, it was said that:

"A court of equity has no jurisdiction to enjoin the commencement of criminal proceedings, even though the statute may be unconstitutional."

The case of Davis & Farnam Manufact··ing Co. v. City of Los Angeles (C. C.) 115 Fed. 537, is an interesting case, because Judge Wellborn, sitting in the Circuit Court for the Southern District of California, discusses, analyzes, and distinguishes the most of the important cases on this subject. The general conclusion reached is expressed in the headnote as follows:

"A court of equity is without jurisdiction to enjoin criminal prosecutions under a statute or ordinance alleged to be unconstitutional and void, even though it is also alleged that it is the purpose of such prosecutions to injure complainant in his property rights, and that such will be their effect."

In concluding the opinion in this case, Judge Wellborn says:

"In addition to what has already been said, it may be appropriately observed that municipal and state regulations of saloons, beer halls, theaters, and places of amusement generally, market places, slaughter houses, gasworks, powder magazines, laundries, cemeteries, fire limits, streets (particularly obstructions, railway tracks, telegraph poles, pipe lines, etc., therein), indeed all establishments, trades, and occupations subject to the police power of the state, unavoidably affect property rights, and are usually rendered effective by making their violations punishable offenses. Now, if there were such jurisdiction as that for which complainant contends, every controversy over the validity of an ordinance or statute relating to any of the matters enumerated would furnish an occasion for interference by injunction, and thus would be presented the remarkable situation of courts of equity, state and federal, exercising supervisory power over the administration of a part, not inconsiderable, of the criminal laws of the country."

This case went by appeal to the Supreme Court of the United States, and is reported in Davis & Farnam Manufacturing Company v. Los

Angeles, 189 U. S. 207, 23 Sup. Ct. 498, 47 L. Ed. 778. In the opinion of the Supreme Court delivered by Mr. Justice Brown in that case, it is said:

"The general rule that a Circuit Court of the United States sitting as a court of equity, cannot stay by injunction proceedings pending in a state court to enforce the criminal laws of such state, was applied in Harkrader v. Wadley, 172 U. S. 148, 19 Sup. Ct. 119, 43 L. Ed. 399, to a case where the plaintiff sought to enjoin proceedings against him for the embezzlement of the assets of a bank; and in Fitts v. McGhee, 172 U. S. 516, 19 Sup. Ct. 269, 43 L. Ed. 535, to a suit brought by the receivers of a railroad against the Attorney General of the state to restrain him from instituting or prosecuting criminal proceedings to enforce against the plaintiff the provisions of a state law reducing the tolls which had been exacted of the public by the railroad of which the plaintiff was receiver. This was held to be in reality a suit against the state to enjoin the institution of criminal proceedings, and hence within the general rule."

In Fitts v. McGhee (cited in this case of Davis & Farnam, etc., **v.** City of Los Angeles) it had been stated in the opinion of Mr. Justice Harlan, after citing certain cases where a grant of injunction had been sustained, that:

"Upon examination it will be found that the defendants in each of those cases were officers of the state, especially charged with the execution of a state enactment alleged to be unconstitutional, but under the authority of which it was averred they were committing or were about to commit some specific wrong or trespass to the injury of the plaintiff's rights. There is a wide difference between a suit against individuals, holding official positions under a state, to prevent them, under the sanction of an unconstitutional statute, from committing by some positive act a wrong or trespass, and a suit against officers of a state merely to test the constitutionality of a state statute, in the enforcement of which those officers will act only by formal judicial proceedings in the courts of the State. In the present case, as we have said, neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement. If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute by an injunction suit brought against them, then the constitutionality of every act passed by the Legislature could be tested by a suit against the Governor and the Attorney General, based upon the theory that the former, as the executive of the state, was in a general sense charged with the execution of all its laws, and the latter, as Attorney General, might represent the state in litigation involving the enforcement of its statutes. That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals."

In a recent case of Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, which, although an application for habeas corpus by Young, Attorney General of Minnesota, to the Supreme Court, because of his having been held for contempt by the Circuit Court for a violation of an injunction issued in a railroad rate case, the question of the right of the court to grant the injunction against the enforcement of the rates established by the Minnesota Commission was fully considered and determined. Mr. Justice Peckham, after distinguishing the case at bar from In re Sawyer, supra, said:

"It is proper to add that the right to enjoin an individual, even though a state official, from commencing suits under circumstances already stated, does not include the power to restrain a court from acting in any case brought be-

fore it, either of a civil or criminal nature, nor does it include power to prevent any investigation or action by a grand jury. The latter body is part of the machinery of a criminal court, and an injunction against a state court would be a violation of the whole scheme of our government. If an injunction against an individual is disobeyed, and he commences proceedings before a grand jury or in a court, such disobedience is personal only, and the court or jury can proceed without incurring any penalty on that account.

"The difference between the power to enjoin an individual from doing certain things, and the power to enjoin courts from proceeding in their own way to exercise jurisdiction, is plain, and no power to do the latter exists because of a power to do the former."

The decisions of the Supreme Court of the state of Georgia, while they are not controlling, should at least be highly persuasive as to the proper rule of equity practice to be adopted in cases of this nature. These decisions are uniform in holding that a court of equity has no jurisdiction over criminal proceedings. In Gault v. Wallis, 53 Ga. 575, it was held that courts of equity have no jurisdiction in criminal laws of the state, by injunction or otherwise. In Phillips v. Mayor of Stone Mountain, 61 Ga. 386, the holding is that "no injunction or order in the nature of an injunction shall be granted to restrain proceedings in a criminal matter." In Garrison v. City of Atlanta, 68 Ga. 64, following the case just cited, it was held that injunctions should not be granted to restrain criminal proceedings. In Paulk v. Sycamore, 104 Ga. 24, 30 S. E. 417, 41 L. R. A. 772, 69 Am. St. Rep. 128, in an opinion by Justice Fish, this question was discussed, former decisions considered, and a conclusion was reached which is summarized in the first headnote as follows:

"Courts of equity will not by injunction prevent the institution of prosecutions for criminal offenses, whether the same be violations of state statutes or municipal ordinances, nor will they, upon a petition for an injunction of this nature, inquire into the constitutionality of a legislative act, or the validity or reasonableness of an ordinance making penal the act or acts for the doing of which prosecutions are threatened."

In the opinion in this case the decision in City of Atlanta v. Gate City Gas Light Company, 71 Ga. 106, is considered and distinguished, and attention called to the peculiar features of that case which justified the grant of an injunction, and the reasons given why it did not conflict with the line of cases in which it had been held that courts of equity will not interfere with the institution of, or prosecution in, criminal cases. After quoting from the opinion in City of Atlanta v. Gate City Gas Light Company, this is said in the opinion:

"It will be seen that the distinguishing feature of that case, and the one which was successfully employed in invoking the interposition of equity, was the patent fact that the threatened prosecutions under the municipal ordinances were being used, not for the legitimate purpose of preventing the streets of the city from being unlawfully injured or obstructed, but for the purpose of destroying the valuable vested franchises of the Gate City Gas Light Company, and equity, seeing the palpable fraud which was being perpetrated under color of what purported to be a simple police regulation, stretched forth its strong arm to prevent the irreparable damages which would ensue if it did not afford its protection to the rights which were thus imperiled."

In City of Bainbridge v. Reynolds, 111 Ga. 758, 36 S. E. 935, citing Paulk v. Sycamore, supra, it is held that a court of equity will not by

injunction prevent the institution of a prosecution for the violation of a penal municipal ordinance; nor will it, upon petition for an injunction of this nature, inquire into the validity of such an ordinance, upon constitutional or other grounds.

Salter v. City of Columbus, 125 Ga. 96, 54 S. E. 74, was a case in which a nonresident brewing company, through its agent, Salter, enjoined the city of Columbus from interfering with it by prosecution in the municipal court for the sale and delivery of beer in the city. Citing Paulk v. Sycamore, supra, and Bainbridge v. Reynolds, supra, it is held:

"Courts of equity will not enjoin or prevent the institution of prosecutions for violations of penal municipal ordinances, nor inquire into the validity or reasonableness of ordinances making criminal the acts for the doing of which prosecutions are threatened."

In the recent case of Georgia Railway & Electric Company v. Town of Oakland City, 129 Ga. 576, 59 S. E. 296, the rule announced in all the preceding cases mentioned is adhered to in the opinion by Lumpkin, J. After discussing these former decisions it is said:

"The rule that a court of equity will not ordinarily enjoin a criminal act considered merely as such, but will enjoin a trespass working irreparable damage to property, although the act may also be the subject of punishment, is often invoked to authorize an injunction against a criminal prosecution. But an individual act causing irreparable damage is one thing; the prosecution of a person charged with an offense, in the courts provided for the trial of such proceeding, is a different thing."

It is unnecessary to cite decisions from other states, or from textbooks, because all are uniform, I think, and in entire harmony with the decisions of the courts of the United States, and the Supreme Court of this state, which have been referred to.

The line of demarkation between cases in which a court of equity will, and will not, interfere, may not always be entirely clear. Cases have arisen and may arise which are difficult to place. To my mind there is no difficulty about this case. It ranges itself easily with that class of cases of which courts of equity have always declined to take jurisdiction, and is readily distinguishable from cases like Reagan v. Farmers' Loan & Trust Company, 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014, Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819, and In re Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, in which the Supreme Court of the United States has held that a court of equity might properly assume jurisdiction and grant injunction. The distinction between the two classes of cases is pointed out in the opinion of the Supreme Court of the United States in Re Young, supra, and in the opinion of the Supreme Court of Georgia in Paulk v. Sycamore, supra, and in the same court in Georgia Railway & Electric Company v. Town of Oakland City, supra.

It is not shown by this bill that it is proposed by any of the defendants to take any of the property of the complainants, or to interfere with it. It is claimed that criminal prosecutions will be instituted, and it is against this that relief is sought. It is proposed to enjoin the summoning of witnesses, the preparation and presentation to

grand juries of bills of indictment, and prosecutions in the city court of Atlanta and in the recorder's court, and arrest under such prosecutions. Looking at the case in this way, and testing it by the prayer of the bill, what is the result? It is sought to prevent C. D. Hill, as Solicitor General of Atlanta, from preparing bills of indictment and presenting them to the grand jury. This is clearly not within the jurisdiction of a court of equity. It is sought to prevent Lowry Arnold, solicitor of the city court of Atlanta, from instituting prosecutions in that court. This is also without the power of a court of equity. It is sought to enjoin Arnold Broyles, clerk of the superior court of Fulton county, and also clerk of the city court of Atlanta, presumably, from what is stated in the bill, from issuing subpœnas to witnesses, bench warrants, etc. It is sought to enjoin John W. Nelms, sheriff of Fulton county, and Henry Jennings, chief of police, in the city of Atlanta, from serving warrants and making arrests, and also to enjoin N. R. Broyles, recorder of the city of Atlanta, apparently, though this is not insisted upon in argument, from trying offenders against the ordinance of the city of Atlanta, or sitting as investigating magistrate and hearing evidence as to the violation of the state prohibition law. A mere statement of the prayer of the bill, and what is sought to be done, makes it so clearly an effort solely to interfere with criminal prosecutions, contrary to the well-established rule on that subject in England and the courts of this country, both federal and state, that it seems unnecessary to discuss it further.

The foregoing views are controlling, but I think it is proper to add that the subject-matter of this case is peculiarly for the courts of the state. It concerns the internal policy of the state. The legislation was in pursuance of what was believed to be the proper exercise of the police power of the state. The grounds of attack upon this prohibition act mainly stressed in argument were that it was violative of the Constitution of the state of Georgia, and the grounds specially and strongly urged were that the title of the bill stated two subjects-matter, and that the journal of the Senate fails to show that it was properly passed by the requisite constitutional vote of that body. The most important of these two questions is the failure of the journal to show the passage of the bill by a constitutional majority when it came back from the House to the Senate, and, as determining this, what is the final passage of the bill in the Georgia Legislature. This is specially a matter for the courts of the state, and ultimately for the Supreme Court of the state.

It is alleged in the bill that in certain respects this act is violative of complainants' rights under the Constitution of the United States, but this was hardly referred to in argument, certainly it was not strongly urged. Whatever may be true about this, however, any of the grounds suggested as justifying relief, either under the Constitution of the United States or of the state of Georgia, can readily be interposed as defenses to any prosecutions under this act, and, so far as any federal questions are insisted upon, they can reach and be heard by the Supreme Court of the United States by writ of error from that court to the highest court of the state.

Entertaining the views hereinbefore expressed, it results that, in my opinion, the Circuit Court of the United States, sitting as a court of

equity, has no authority to entertain this bill, or to grant the relief sought. It is unnecessary, therefore, and would perhaps be improper, for me to express any opinion as to the merits of the questions raised in this bill. This may well be left for determination when such questions shall be raised in the proper way before a court of competent jurisdiction.

The demurrer to the bill will be sustained, and a decree may be taken to that effect.