JOHN J. PLEASANTS v. FRANK L. SMITH ET AL.

[43 South., 475.]

EQUITY JURISPRUDENCE. *Injunction. Criminal prosecutions. Disturbing peace. Megaphone.*

Equity will not enjoin the making of affidavits against a merchant and the arresting and fining him for alleged disturbances of the peace in using a megaphone to call attention to a clearance sale; there being in a just sense no property right involved and his rights, whatever they be, are determinable in the law courts.

FROM the chancery court of, second district, Coahoma county.

HON. PERCY BELL, Chancellor.

Pleasants, appellant, was complainant in the court below; Smith and another, appellees, were defendants there. From a decree dissolving a preliminary injunction the complainant appealed to the supreme court.

Pleasants was engaged in mercantile business in the town of Clarksdale. Being heavily over-stocked with goods, and having pressing obligations, he instituted a clearance sale of his stock. As a means of advertising the sale he went in person upon the streets of the town in the vicinity of his store, and, by the use of a megaphone, from time to time, called the attention of the general public to the sale. He continued this for several weeks, both in person and through agents. While so engaged he was arrested by the appellee, Smith, the town marshal, upon affidavit made by Smith before one Johnson, mayor *pro tempore* of Clarksdale, and an appellee here, charging that appellant in so advertising his sale violated an ordinance of the town which (omitting formal parts) is as follows: "If any person shall, within the corporate limits of said town, wilfully disturb the peace and quiet of said town by loud and unusual noise, by yelling, swearing, using obscene lan-

guage or conversation, by quarreling, challenging or fighting, such offender shall be deemed guilty of a misdemeanor and breach of this ordinance, and, upon conviction thereof before the mayor, shall be fined not less than $2.50 nor more than $10, and shall remain in the custody of the marshal until such fine and costs are paid."

Appellant was tried, convicted and fined under this ordinance; appealed to the circuit court, and, being released under bond, again proceeded to use his megaphone upon the streets of the town as before. He was twice again arrested, tried, convicted, and appealed; and was, moreover, notified both by the mayor *pro tempore* and by the marshal that as long as he continued to use his megaphone to advertise his sale, he would be arrested and tried for violation of the ordinance. He thereupon sued out an injunction against the mayor *pro tempore* and the marshal, his bill of complaint alleging that his method of using the megaphone was in no wise disorderly or against the terms of the ordinance, and further that the defendants, in making affidavits against and arresting and fining him, sought to harass him without just cause; and that, if not permitted to advertise his sale in the method adopted, he would sustain great injury. A motion was made by defendants to dissolve the injunction, many affidavits were filed by the respective parties, those for the complainant being to the effect that there was no disturbance of the public by the use of the megaphone, while those for defendant alleged that complainant's methods constituted a public nuisance because of loud and incessant din and noise. The chancellor sustained the motion, dissolved the injunction, and awarded $250 damages as a solicitors fee for defendants.

*D. A. Scott,* for appellant.

The ordinance under which the appellant was tried and convicted, and under which he is threatened to be again and again tried and convicted if continuing in his course of adver-

tising, is clearly in violation of both the state and federal constitutions. It deprives the appellant of his property and civil rights without due process of law, and also denies him the equal protection of the laws in that it has the effect of preventing the appellant or any one else from exercising the right of free speech. The ordinance makes it a misdemeanor even to talk in a very loud tone of voice upon the streets of the municipality.

This court through COOPER, C. J., in dealing with the constitutionality of an act of the legislature declaring that the erection of certain buildings on the Gulf front in Bay St. Louis should be a nuisance, used language, which if slightly changed would suit this case to a nicety. See *Quintini* v. *City Bay St. Louis,* 64 Miss., 483, s.c., 1 South., 625. Judge COOPER stated in the case cited that "the legislature cannot constitutionally declare that a-given use of a particular tract or parcel of land is harmful and a nuisance; for this would be exercising a judicial function." By the same reasoning it is here submitted that the municipality of Clarksdale cannot constitutionally declare that any person is guilty of wilfully disturbing the peace and quiet of the city of Clarksdale merely by talking, as did appellant, in an ordinary tone of voice, even though the person uses a megaphone through which he talks. Such effort on the part of the municipality would be *ultra vires.*

In the *Quintini case, supra,* Justice COOPER further states that "it is with common humanity that the legislature and courts must deal, and the use of property which in all common sense and reason is not a nuisance to the average man cannot be prohibited because repugnant to some sentiment of a particular class." We say here that we are dealing with a common humanity, and we contend that the appellant by using a megaphone through which he talked did not commit an act which in common sense and reason would be regarded as a disturbance of the peace and quiet of the community, by the average man, even though that act should be repugnant to some sentiment of a particular class.

The opinion in the *Quintini case* further states that "the legislature in the exercise of police power may prohibit in particular localities such use of property as injures the public health, and what it may do may also be authorized to be done by the local authorities, but it does not follow that it may by mere declarations convert the harmless, proper and ordinary use of property into a nuisance." We respectfully submit that this language is peculiarly applicable to the case at bar. For even if it be admitted that the city of Clarksdale had the legal right to pass the ordinance under which appellant was convicted, it does not follow that by a mere declaration the municipality could prohibit or did intend to prohibit the harmless, proper and ordinary use of the human voice by its citizens.

It is further stated in the *Quintini case* that "the fact that, in declaring buildings of the character in question nuisances, the municipal authorities have provided that persons who erect them may also be prosecuted in the courts of the town, does not preclude relief by injunction. The ordinance, as we have said, is an attempted dedication of private property to public uses without due compensation first made, and this a court of chancery has jurisdiction to prevent. It is immaterial that the exercise of this power will, as a consequence, protect the owner from criminal prosecution." We again respectfully say that the reasoning here indulged in by Justice COOPER applies with peculiar force to the questions with which this court is here called upon to deal in this litigation. See *Dobbin* v. *Los Angeles,* 195 U. S., 223, 49 L. Ed., 169.

As regards the contention of the appellees that the appellant had a plain, adequate and complete remedy in a court of law, we submit that such was not the case, inasmuch as every act of the appellees, complained of by appellant, was done *colore officii,* and it was not contended by appellant that the appellees acted dishonestly or fraudulently. In fact, it was presumed by appellant that the mistakes of appellees, recited in the bill

of appellant, were honest and judicial errors for which they would not be liable in a civil or criminal action.

It is equally clear that the city of Clarksdale, as a municipality, would not be responsible in damages for any such mistake of these duly commissioned officers. Appellant's sole recourse, accordingly, was to a court of equity. 22 Cyc., 763, 764.

"When irreparable injury is spoken of it does not mean that the injury is beyond possibility of repair, or beyond the possibility of compensation in damages, but it must be of such constant and frequent recurrence that no fair or reasonable redress can be had therefor in a court of law." *R. R. Co.* v. *R. R. Co.,* 181 Ill., 605; *Montgomery Bank* v. *Tyson,* 133 Ala., 459; *Olifant* v. *Richmond,* 67 N. J. Eq., 280. "Damages at law are inadequate when they cannot put the injured party in *statu quo."* *Wood* v. *Sutley,* 16 Jur., 75. See also *Patterson* v. *Gate City Gas Light Co.,* 71 Ga., 106.

There cannot be any dispute as to the proposition that as a general rule courts of equity will not interfere by injunction to restrain or enjoin the commission of a criminal offense or to enjoin any criminal proceedings had or begun under any state statute or municipal ordinance. But it is here questioned by appellant whether any exceptions have been grafted upon and thereby become an integral part of this fundamental and universal rule. And appellant contends that there is one exception to this general rule, which we here state: wherever it is made to appear to a court of equity that any citizen is, by the oppressive, arbitrary and harassing action of another in causing his arrest, about to be despoiled of his property or civil rights, the court of equity will reach out its strong arm to grant relief, even though in so doing the extraordinary writ of injunction is necessary, and the party against whom the complaint is made is thereby precluded from proceeding in a criminal action against the complainant. See *Sheridan* v. *Colvin,* 78 Ill., 237; *In re Sawyer,* 124 U. S., 200; *Emperor of Austria* v. *Day,* 3 De Gex. F. & J., 217; *Spinning Co.* v. *Riley,*

L. R., 6 Eq., 558; *Live Stock Ass'n* v. *Crescent City, etc., Co.,* 1 Abb. (U. S.), 389.

If we accept the doctrine announced by the cases above cited, it is manifest that under the exception to the general rule, courts of equity will without hesitation grant injunctions to prevent criminal prosecutions under statutes or municipal ordinances, and will sustain such injunctions where property rights or civil or political rights are in any wise involved.   See *City of Rushville* v. *Gas Light Co.,* 15 L. R. A., 321; *Davis* v. *Fasig,* 128 Ind., 271; *Express Co.* v. *Ensley,* 116 Fed. Rep., 756.

In 22 Cyc., 902, it is stated that the rule is well settled that where the intervention of equity by injunction is warranted by the necessity for protection of civil rights or property interests, the fact that a crime or statutory offense may be enjoined as incidental thereto will not operate to deprive the court of its jurisdiction.   See also *Mobile* v. *L. & N. R. R. Co.,* 84 Ala., 116; *Osborn* v. *Bank,* 9 Wheat. (U. S.), 739; *Davis* v. *Gray,* 10 Wall., 203.

Equity will enjoin criminal proceedings under a void municipal ordinance where property rights will be destroyed by its enforcement.   *Dobbins* v. *City of Los Angeles,* 195 U. S., 223, 49 L. Ed., 169; *Forscheimer* v. *Mobile,* 127 S. C., 112; *Cicero Lumber Co.* v. *Cicero,* 68 Am. St. Rep., 155, 176 Ill., 9; *Austin* v. *Cemetery Ass'n,* 87 Tex., 339.

Courts of equity will by injunction prevent the commission of crime wherever any property rights or civil rights are involved.   Justice BREWER, speaking for the United States supreme court, enunciates this in the suit of *Eugene Debs,* 158 U. S., 564, 39 L. Ed., 1093.   See numerous cases cited in that case.

This is indeed the winter of appellant's discontent, and unless he is helped by equity there will be nothing to make his winter a glorious summer, inasmuch as he will, without aid of equity, be left without any possible hope or possibility of relief.

*Chas. W. Clark,* for appellees.

The contention of the appellant that he did but speak "in an ordinary tone of voice" through his megaphone, is open to some objections.   A "megaphone" is defined by Webster's Dictionary, 1906 edition, as "a form of speaking trumpet."   A "speaking trumpet" is defined by this same authority to be "a conical, flaring-mouthed tube employed to intensify the sound of the human voice."   Hence appellant might have spoken in what he chooses to call "an ordinary tone of voice," and yet have had his tones so "intensified" as to constitute a "loud and unusual noise."   If an ordinary tone of voice was sufficient to advertise to the public the sale, why did appellant need to use a megaphone?

The chancery court had no jurisdiction in this case, because there was, in strict construction of law, no property right of the appellant involved.   The *Quintini case,* 64 Miss., 483, s.c., 1 South., 625, cited by appellant, does not support his contentions. There the town passed an ordinance that no owner of real property between the shell road and the shore could build a house thereon; the object being to preserve unimpaired the view of Mississippi Sound.   Mrs. Quintini attempted to build a house on her land between the shell road and the shore, and was arrested for violating the ordinance, and threatened with other arrests.   This court held that the ordinance was void on its face in that it was an attempt to take property without due process of law.   The *Quintini case* thus involved real property under a void ordinance.   But the appellant, Pleasants, has here shown no property rights which have in any way been infringed upon. The ability to blow a megaphone may be an accomplishment; but it is hardly a vested right.

That no property rights are here concerned is apparent. The city officials made no objection to Pleasants' clearance sale. He might have advertised in the press or on fences.   He might have plastered every wall for miles around with notices.   He might have lined the streets with "sandwich men."   And in.

any such case the town officials would not have made objection. But there is a wide gulf between legitimate advertising and committing public nuisance by unusual methods in trade. Every city in the land rightfully exercises a restraining power over "street fakirs." All sorts of restrictions are cast about the use of the festive street piano in the hands of the enterprising foreigner. Every town has the right to put restrictions on the use of the shrill steam whistles within the corporate limits. Yet, in the face of this, and in the face of the principle involved, Pleasants, under the idea that he is entitled to free speech, thinks he may be immune when he seeks to bombard his unwilling neighbors, through a megaphone, with a glowing description of his goods, wares and merchandise. Would Pleasants have the right to make everybody else unpleasant by beating a drum to attract trade, or to blow a steam siren whistle continuously, or to explode cannon fire-crackers in the streets for advertising purposes? When we consider property rights we must keep in mind the property rights of the other good citizens of Clarksdale as well as the rights of the appellant.

If it be one of the rights of free speech, guaranteed to every individual under the constitution, to blow a megaphone about the streets of a populous town, how about this proposition: Suppose the action of the appellant in using his horn had caused a passing team of horses to run away in fright, and injure some woman; or suppose that appellant had marched in front of some dwelling house where a person lay at death's door, and there had bawled through his flaring-mouthed megaphone the news that he, appellant, was holding a clearance sale where goods were to be sold at very low prices, and suppose that this news had sent the sick man into convulsions. Could it in such instances be justly contended that the appellant was only exercising his constitutional rights, and that the injury sustained either by the woman or by the sick person was *damnum absque injuria?*

It is true that the appellant's bill of complaint alleged that unless the appellees were restrained from arresting and trying

him under the ordinance in question, he would sustain irreparable injury. The phrase "irreparable injury" is a very vague term. We submit, however, that when used with reference to the jurisdiction of courts of equity, the phrase must be considered as giving jurisdiction only when injury to property rights are concerned. And before a person is entitled to an injunction, if he relies upon equity to help him because of his being threatened with "irreparable injury," he must show that the injury is to his rights of property. In the instant case, no one denies that the appellant has the right to his stock of goods; even his ownership of the megaphone is not disputed. But his contention is, that if he is not permitted to use his megaphone in a certain way, irreparable injury will result to his large stock of goods. This is a futile contention. Suppose Richard Roe has a large garden just within the corporate limits of a town, which is attacked by a great flock of crows. Suppose, further, that, to protect his garden, Richard Roe fires off his gun at them. Now a town ordinance forbids the firing of one's gun within the town's corporate limits. Can Richard Roe say in defense, when arrested for violating the town ordinance, that the land and crop and the gun are his, and that unless permitted to shoot his gun irreparable injury will be inflicted on his crop by the crows? The only difference between Richard Roe's case and the appellant's is, that Richard Roe is trying to drive away a crowd of crows, while appellant is seeking to attract a crowd of men. The law says that there are better ways to drive away crows and better ways to attract crowds than by using guns and megaphones to the detriment of all good citizens in the neighborhood.

This case is settled by the case of *Crighton* v. *Dahmer,* 70 Miss., 602, s.c., 13 South., 237, which holds that "equity has no jurisdiction to enjoin one from making affidavits charging a criminal offense. It is immaterial that the prosecution is alleged to be groundless, and that the defendant has threatened to continue to have the complainant arrested from day to day as a

trespasser because of his occupancy of certain premises, the possession of which the defendant claims." See also the clear cut decision of the court of New York in the case of *Davis* v. *Society for Prevention of Cruelty to Animals,* 75 N. Y., 362. Also *Poyer* v. *Village of Des Plains,* 123 Ill., 111, 13 N. E., 819, 5 Am. St. Rep., 494; and *Paulk* v. *Mayor of Sycamore,* 104 Ga., 24, 30 S. E., 417, 41 L. R. A., 772.

The case of *Dobbins* v. *City of Los Angeles,* 195 U. S., 223, 49 L. Ed., 169, cited by appellant, is, like the *Quintini case,* 64 Miss., 483, a case wherein property rights in real property were concerned; hence, for the reasons above shown, cannot be here applicable.

There was ample proof before the lower court to sustain the claim of appellees that the use of the megaphone by appellant caused such a constant din and uproar as would constitute a public nuisance.

WHITFIELD, C. J., delivered the opinion of the court.

The chancery court had no jurisdiction whatever in this cause. There are no property rights involved, in any proper sense of the word "property." The constitutionality of the ordinance, if it is assailed, can be determined in the law court. Whether, if constitutional, the appellant is guilty or not, is a question exclusively of criminal jurisdiction, with which equity has nothing to do. The case is wholly unlike *Quintini* v. *Board of Mayor and Marshal of Bay St. Louis,* 64 Miss., 483, 1 South., 625, 60 Am. Rep., 62, for there property rights in real estate were directly involved. The case falls squarely within the case of *Crighton* v. *Dahmer,* 70 Miss., 602, 13 South., 237, reported in 35 Am. St. Rep., 666, with notes. And see, same case and notes, 21 L. R. A., 84. The general principle insisted upon by the learned counsel for the appellant may be conceded—the principle announced in the case of *Quintini* v. *Bay St. Louis, supra;* but in no possible legal view can the appellant be said to have involved here any proper rights, or to

be subjected to any irreparable damage.   We quote, to approve, the following language from *Davis* v. *Society for Prevention of Cruelty to Animals,* 75 N. Y., 362.  In that case the complainant had been arrested and convicted for killing animals in a brutal manner, and was threatened with more arrests if he did not desist.   In denying his appeal from a decree dissolving a restraining injunction, the court said:  "If this action could be maintained in this case, then it could in every case of a person accused of a crime, when the same serious consequences would follow an arrest; and the trial of offenders, in the constitutional mode prescribed by law, could forever be prohibited.   A person threatened with arrest for keeping a bawdy house, or for violating the excise laws, or even for the crime of murder, upon the allegation of his innocence of the crime charged and of the irreparable mischief which would follow his arrest, could always draw the question of his guilt or innocence from trial in the proper forum.   An innocent person, upon an accusation of crime, may be arrested and ruined in his character and property, and the damage he thus sustains is *damnum absque injuria,* unless the case is such that he can maintain an action for malicious prosecution or false imprisonment.   He is exposed to the risk of such a damage by being a member of organized society, and his compensation for such risks may be found in the general welfare which the society is organized to promote.   The case of *Dobbins* v. *City of Los Angeles,* 195 U. S., 223, 25 Sup. Ct., 18, 49 L. Ed., 169, is, like the *Quintini case,* one in which property rights in real property were involved.

We refer specially to two cases cited by learned counsel for appellee:  *Poyer* v. *Village of Des Plains,* 123 Ill., 111, 13 N. E., 819, 5 Am. St. Rep., 494; *Paulk* v. *Mayor of Sycamore,* 104 Ga., 24, 30 S. E., 417, 41 L. R. A., 772, 69 Am. St. Rep., 128.   In the first of these cases a town ordinance prohibited all public picnics and open air dances within the town limits.   The complainant filed his bill, in which he alleged that he had

grounds within the town limits which he had fitted up for picnics, etc., and that all the assemblages on his grounds had been orderly, etc.; that he had been arrested for violating the ordinance, and that he was threatened with other arrests, unless he refrained from having these public picnics and dances; that the suits were brought maliciously to ruin his business and reputation, and that he would suffer irreparable injury unless they were enjoined; that he had been fined $50 in one case, from which conviction he had appealed to the criminal court of Cook county; that the defendants had threatened to institute other prosecutions, etc. · The court said: "Nothing could be more detrimental to society and provocative of violation of law than for courts of equity to interfere in such cases by injunction and thereby protect repeated acts in violation of ordinances which might each furnish new ground for complaint. While the injunction continued, the functions of municipal government would be suspended, and irreparable injury might thereby ensue. If the municipal law be of doubtful validity, the complainant cannot, by his wilful and repeated violations of its provisions, each furnishing separate grounds for prosecution, and depending upon separate facts, create this ground for equitable interposition, without first settling the validity of the ordinance in the courts of law. If he fears the prosecution of other suits, he can refrain from repetition of his acts in violation of its provisions until the proper forum has determined its validity. If the authorities of this village can be enjoined from prosecuting under an ordinance preservative of the peace, so they might be restrained from the enforcement of any other ordinance of the village. Their effort to discharge their duty to the public would be unavailing, and the community left at the mercy of the lawless and vicious elements of society until such time as the question could be settled in the courts of equity. If it should, at last, be determined that the ordinance was valid, that court would be powerless to enforce its provisions, or impose the pen-

alties denounced against its violation, but must remit the cases to the courts of law, which, before the assumption of jurisdiction by the courts of equity, had the right to determine every question submitted to, and determined in, the equity jurisdiction." In the latter case the court said: "Having voluntarily gotten himself into his predicament, he now invokes the aid of equity to extricate him therefrom, upon the plea that his business will be ruined without authority of law unless he is afforded this relief. He deliberately undertook to test the validity of both the local law and the ordinance of Sycamore by voluntarily and knowingly engaging in the business which they prohibited. He has ample opportunity to make this test in the courts having jurisdiction over criminal matters, and a court of equity will not invade their domain in his behalf."

It may be remarked, in conclusion, that the jurisdiction of equity in matters of this character, even where property rights have been involved, has been pressed to the utmost limit that principle and reason can possibly uphold. Indeed, the jurisdiction should be restricted, rather than expanded. Certainly this case falls clearly outside the jurisdiction of the equity court in any possible view of the matter.

*The decree of the chancellor is affirmed.*