MAYOR & COUNCIL OF SHELLMAN *et al. v.* SAXON.

1. The general rule is that courts exercising equitable jurisdiction will not enjoin criminal prosecutions; and this rule is ordinarily applicable to proceedings to punish for violations of municipal ordinances, which are quasi criminal in their character.
2. In some cases, involving special facts, injunction may be granted against the unlawful enforcement of municipal ordinances, although they are penal in character, for the protection of property or property rights or franchises against irreparable injury; as, for instance, where, under the guise of enforcing a penal ordinance, it is manifest that prosecutions and arrests are threatened for the sole purpose of unlawfully taking or destroying property, or preventing the exercise of a franchise granted by the State.
3. The present case falls within the general rule, and is not one of those involving facts where a court of equity, or a court exercising equitable powers, will grant an injunction to restrain prosecutions under a municipal ordinance.
(a) The question of the validity of the ordinances under which the complainant was tried and convicted in the mayor's court, and from which judgment he carried the cases to the superior court by writs of certiorari, could be determined in those proceedings.

FEBRUARY 17, 1910.

Injunction. Before Judge Worrill. Randolph superior court. May 7, 1909.

*M. C. Edwards,* for plaintiffs in error.

*T. T. Miller,* and *James W. Harris,* contra.

LUMPKIN, J.    The Mayor and Council of Shellman adopted two ordinances at the same meeting, one prohibiting the selling, within the corporate limits, of any imitation of or substitute for beer, ale, wine, whisky, or other spirituous or malt liquors which contained more than one fourth of one per cent. of alcohol; and the other imposing a number of stringent regulations, restrictions, and requirements upon persons selling such imitations or substitutes within the corporate limits.    W. T. Saxon filed his equitable petition against the municipal authorities, seeking to have them enjoined from enforcing such ordinances by means of criminal prosecutions.    It was alleged, that he had obtained from the ordinary a license which authorized him to engage in such business in Shellman; that the authorities had no power to enact the ordinances in question; that the second of the two was unreasonable, and in effect placed a burden upon the business, seeking rather to prohibit than to regulate it; that he had been tried before the mayor under a charge based on each ordinance, had been convicted, and had carried each case to the superior court by writ of certiorari; and that repeated arrests would be made, and interference with his business would result, if he continued to sell, thereby causing him irreparable damage. The defendants contended that the ordinances were valid, and that they had a right to prosecute and punish the plaintiff if he violated the municipal laws.    They alleged that at the time when the application for injunction was made the cases pending on writs of certiorari in the superior court would have been heard within two weeks, and that they could be heard and the validity of the ordinances determined on the day when the application for injunction was set to be heard.    There were also contentions as to the character of the business conducted by the plaintiff, and other matters not material to be recited.    The presiding judge granted the injunction restraining the municipality, its officers, agents, and servants from arresting the plaintiff or in any manner interfering with his business under and by virtue of either of the ordinances.    The defendants excepted.

We need not enter into a discussion of whether the ordinances adopted by the municipal authorities were invalid for want of power to enact them, or because they were unreasonable.    Under former rulings of this court, and under the facts of this case, we are compelled to differ with our learned brother of the circuit bench as to

the mode of testing those questions. The general rule is that a
court of equity has no jurisdiction to enjoin criminal proceedings;
and, in pursuance of this general rule, it has been said that "Chan-
cery takes no part in the administration of criminal law. It neither
aids the criminal courts in the exercise of jurisdiction, nor restrains
or obstructs them." *Phillips* v. *Mayor etc. of Stone Mountain,*
61 *Ga.* 386, 388; *Pope* v. *Mayor etc. of Savannah,* 74 *Ga.* 365. This
announcement has been codified in section 4914 of the Civil Code
of 1895. The rule that a court of equity will not generally enjoin
criminal prosecutions has also been commonly applied to pro-
ceedings to punish for violations of municipal ordinances, which
are quasi criminal in their nature. In some decisions the general
rule is expressed broadly, and without noting any exception, that
courts of equity will not enjoin or prevent the institution of prose-
cutions for violations of penal ordinances, or inquire into the va-
lidity or reasonableness of ordinances making punishable the acts
for the doing of which prosecutions are threatened. But while
this is the rule, there are cases where equity will protect property
or franchises against invasion by municipalities, although it is
sought to enforce or accomplish such invasion by using criminal
process. In cases where courts of equity have granted injunctions
against prosecutions under municipal ordinances, it will usually
be found that this was ancillary to the exercise of some acknowl-
edged equity jurisdiction for the protection of property or property
rights against irreparable damage, resting upon grounds other than
the mere harassment arising from prosecutions, though repeated.
*Brown* v. *Mayor etc. of Birmingham,* 140 Ala. 590, 601 (37 So.
173). Abuse of legal proceedings, where, by means of a void
penal ordinance, a municipality undertakes to destroy or take away
property or prevent the exercise of a franchise granted by the
State, has furnished illustrative cases of the exercise of the jurisdic-
tion. In *Port of Mobile* v. *Louisville & Nashville R. Co.,* 84 Ala.
115 (5 Am. St. R. 342, 4 So. 106), Somerville, J., said: "It can
not be tolerated that a municipal corporation, in view of these
principles, should escape the grasp of a court of chancery, in a
clear case of equitable cognizance, by the device of adding a penalty
to an illegal and void ordinance," Another illustration is where
a court of equity will enjoin or stay one party to a suit already
pending before it from instituting or prosecuting a criminal pro-

ceeding to try the same right that is in issue there.    It will be observed that in what is said above reference has been made to enjoining a muncipality or a person seeking to use criminal process. There may be a difference where the action is by the State itself.    But a municipality enjoys no such freedom from suit as does a State, and its ordinances must be reasonable.    See *Georgia Railway and Electric Co.* v. *Town of Oakland City,* 129 *Ga.* 576 (59 S. E. 296.), where numerous cases are collated and discussed; Quintini *v.* Bay St. Louis, 64 Miss. 483 (1 So. 625, 60 Am. R. 62) ; Crighton *v.* Dahmer, 70 Miss. 602 (35 Am St. R. 666, 670, note, 21 L. R. A. 84, and note, 13 So. 237) ; Pleasants *v.* Smith, 90 Miss. 440 (43 So. 475, 9 L. R. A. 773, 122 Am. St. R. 317) ; In re Sawyer, 124 U. S. 200 (8 Sup. Ct. 482, 31 L. ed. 402) ; Davis & Farnum Mfg. Co. *v.* Los Angeles, 189 U. S. 207 (23 Sup. Ct. 498, 47 L. ed. 778) ; Dobbins *v.* Los Angeles, 195 U. S. 223 (25 Sup. Ct. 18, 49 L. ed. 169)..

How far the principle as to non-interference of equity would apply in case of an effort by a municipality to prohibit such useful occupations as selling food or clothes, or to unlawfully discriminate against a particular person engaged therein, by void legislation, causing him irreparable damage, need not now be discussed. On the general subject see *Peginis* v. *City of Atlanta,* 132 *Ga.* 302 (63 S. E. 857) ; *Gould* v. *City of Atlanta,* 55 *Ga.* 678; *City of Atlanta* v. *Gate City Gas Light Co.,* 71 *Ga.* 106; *Georgia R. Co.* v. *City of Atlanta,* 118 *Ga.* 486 (45 S. E. 256), (the last two cases being discussed in the case of the *Georgia Ry. & El. Co.,* supra.)    On the somewhat similar principle that equity will not ordinarily enjoin the commission of a crime, merely as such, but may protect property rights from irreparable injury, although the threatened act may subject the person committing it to punishment, see In re Debs, 158 U. S. 565 (15 Sup. Ct. 900, 39 L. ed. 1092) ; *Jones* v. *Van Winkle Gin & Machine Works,* 131 *Ga.* 336 (62 S. E. 236, 17 L. R. A. (N. S.) 848, 127 Am. St. R. 235).

Let us see whether the plaintiff was entitled to an injunction, and whether the case falls within the general rule of non-interference by a court of equity, or within that class of cases where a court having equitable power will take jurisdiction, and which are sometimes referred to as exceptional in character.    A comparison of the basis on which it was claimed that injunction should be granted in

the present case with that put forward in the case of *Phillips* v. *Mayor etc. of Stone Mountain, Pope* v. *Mayor etc. of Savannah, Paulk* v. *Mayor etc. of Sycamore,* 104 *Ga.* 24 (30 S. E. 417, 41 L. R. A..772, 69 Am. St. R. 128), and several other cases which were cited in *Georgia Railway and Electric Co.* v. *Town of Oakland City,* supra, will show that the case at bar falls within the general rule.

Moreover, if, as alleged in the answer of the defendants, the cases pending on writs of certiorari could be heard at or near the time when the application for injunction would be heard, there would seem to be no special reason for resorting to a court of equity to enjoin prosecutions under the ordinances, rather than to have their validity or invalidity determined under the cases already pending.   The petition of the plaintiff was verified on April 4, and alleged that the writs of certiorari had been granted returnable to the May term, 1909, of Randolph superior court.   By law that term was fixed to begin on the first Monday in May.   The rule nisi granted on the plaintiff's equitable petition was made returnable on May 4, which was the first Tuesday in that month.   The hearing was not had on that day, but was continued until May 7, when the injunction was granted.   In addition to other considerations, therefore, the hearing of the question as to the validity of the ordinances under the writs of certiorari and under the application for injunction were set about the same time.   No special reason appears why the court should have dealt with the matter in the exercise of its equitable powers rather than by a consideration of the cases carried before him from the mayor's court.

It may be mentioned in passing that since this case arose in the superior court the act of August 16, 1909 (Acts 1909, pp. 36, 64), has been passed, by which it was declared that no license should be issued to any one to carry on a business of selling any beverage or drink in imitation of or intended as a substitute for beer, ale, wine, whisky, or other alcoholic, spirituous, or malt liquors, in a town or city of less than 2500, to be determined by the last census report of the United States.   This prohibition includes Shellman, and therefore the practical question is now only as to whether the plaintiff in the equitable petition may be prosecuted for alleged past offenses.          *Judgment reversed.   All the Justices concur.*