## CITY COUNCIL OF AUGUSTA et al. v. LOFTIS.

1. The right of appeal from a ruling of the plumbing inspector of Augusta, unlawfully prohibiting the installation of given appliances in a building being erected in that city, to the board of health of that city, and the writ of certiorari do not furnish to a person aggrieved by such illegal action of the plumbing inspector a complete and adequate remedy to redress such wrong; the ruling of such board on appeal to review the action of the inspector being a ministerial or administrative ruling, to which the writ of certiorari will not lie for correction of errors therein.

(a) The ruling of the board of health, on appeal by the party aggrieved by the action of the plumbing inspector, when the ruling of the board is adverse to the appellant, is not such a judgment as will conclude the latter from resorting to a court of equity to enjoin the city council and the inspector from interfering with the installation of such appliances, on the ground that the action of the inspector and of said board amounts to an arbitrary and unreasonable administration of the city ordinance under which they were acting, such appeal being necessary to perfect the party's right to resort to equity by exhausting other available remedies.

2. The provision of the plumbing ordinance of the City of Augusta, making the plumbing inspector the judge of the quality of the material used

in the construction of buildings in that city, does not confer upon that officer the power to prescribe the kind of material to be so used; and when the owner or contractor proposes to use material or appliances which are reasonably suited to secure the safety, welfare, and health of the community, the inspector, under this ordinance, can not reject such material and require the owner or contractor to use other material or appliances, although the latter may be better than those which the owner or contractor proposes to use.

(a) Such action of the plumbing inspector would be an arbitrary and unreasonable administration of the ordinance, which a court of equity will enjoin.

(b) An improper installation of proper appliances would not authorize the inspector to refuse to permit their use, and he would only be authorized to prohibit their improper installation.

(c) The ruling of the inspector, that the installation of proposed appliances is being done improperly is not final and conclusive upon the owner or contractor; and when such ruling is erroneous, a court of equity will grant relief by enjoining its enforcement, it being finally for the courts to decide whether an ordinance is being arbitrarily and unreasonably enforced.

3. Under the pleadings and the evidence the chancellor did not err in granting an interlocutory injunction.

No. 3579.   JULY 14, 1923.

Equitable petition.   Before Judge Hammond.   Richmond superior court.   December 13, 1922.

W. S. Loftis, a contractor, filed his petition against the City Council of Augusta and its plumbing inspector, praying that they be enjoined from interfering with him in the installation of "P" traps in connection with bath tubs in the Richmond Hotel being built in Augusta.   He alleged that he was executing the work in accordance with the plans and specifications furnished by the engineer and architect in charge of the erection of the Richmond Hotel.   These plans and specifications provided for the installation of "P" traps in draining these bath tubs, and no other.   Petitioner's contract called for the installation and use of these traps.   The "P" traps are more sanitary than drum traps, and in accordance with the highest types of plumbing.   When the plans were submitted to the plumbing inspector, he refused to approve the use of "P" traps and arbitrarily and without reason demanded that said plans be changed and that drum traps be used in said hotel.   The plumbing inspector, construing an ordinance of the city arbitrarily and unreasonably, refused to approve the character of plumbing recognized by those in position to know as the most efficient and sanitary plumbing in use.   Said ordinance

provides that "the plumbing inspector is to be the judge of the quality of the material and workmanship; and the construing of the ordinances as to their meaning. Should any difference of opinion arise, appeal from his decision must be made at once, in writing, to the Board of Health, stating full particulars of disputed points, clearly, and copy of same furnished Inspector of Plumbing in six hours; otherwise his judgment will govern." Said ordinance also provides that "Every fixture having a waste-pipe, except in the case of wash-trays, shall have a sufficient, suitable, and approved trap, placed as near the fixture as possible." Said plumbing inspector construes this ordinance to mean that suitable, approved traps are those which he alone approves, to wit: drum traps. Said construction is arbitrary, unreasonable, unjustifiable and discriminatory. At the time the plumbing inspector refused to approve said "P" trap the construction of said hotel had progressed to such a stage that to make the necessary changes for the use of drum traps would have been expensive and would have weakened the entire hotel construction, as it would have required petitioner to cut one, and in some instances two, of the main, concrete ribs supporting the floors of said hotel, approximately 200 in number. Said inspector not only discriminates unjustly against the "P" trap, which is recognized as efficient and sanitary, but discriminates in favor of the drum trap which he insists is the only trap he will approve in this hotel building. If the plumbing inspector's construction of said ordinance prevails, it will be to the great detriment of petitioner, who has contracted to do the plumbing according to plans and specifications of architects of recognized ability. He has expended a large amount in carrying out his contract based on these plans and specifications.

The defendant demurred to the petition on the grounds: (1) that the plaintiff has not set forth an equitable cause of action; (2) that there is no equity in the petition; (3) that petitioner has a complete and adequate remedy at law; (4) that the ordinance of which plaintiff complains provides for appeal from the decisions of the plumbing inspector, and that is the remedy of plaintiff; and (5) that it appears from the petition that the defendants are governmental agencies, that in the things complained of they are acting in their respective governmental capacities in the dis-

charge of governmental powers, and their acts are not subject to review by the court. The defendants filed their answer in which they denied that the action of the plumbing inspector was arbitrary and unreasonable. They admitted the plumbing inspector had refused to permit the use of "P" traps in the Richmond Hotel, and set out the ordinances of the City of Augusta under which he acted. They denied that the plumbing inspector's construction of these ordinances was arbitrary and unreasonable. The pertinent portions of these ordinances are set out above, with this exception: "these traps shall be protected from siphonage or air pressure by a special air-pipe of a size not less than the waste pipe. . . . No more than two fixtures will be allowed, except in case of fixtures having vents smaller than two inches, when three fixtures with 11-½-inch vents may be used on a two-inch pipe; but when two-inch vent is used, only two fixtures will be allowed on a two-inch vent of 20 feet or less; where over 20 feet or more than the above-mentioned fixtures are placed, the vent-pipe shall not be less than three-inch bore, and ten fixtures shall be allowed, without regard to the size of fixture vents, on a three-inch vent-pipe. Where more than ten fixtures are placed, a four-inch vent-pipe shall be used. . . They shall either extend independently through and above the roof of the house or be connected with the main pipe above the highest fixture in the building." The defendants admitted that the plumbing inspector refused to approve the "P" type trap proposed to be installed by the plaintiff, and recommended and insisted upon some one of the drum type traps for said work. They further alleged that the plumbing inspector had the legal right and it was his duty to construe the meaning of the ordinance in question, and his construction thereof is reasonable, justifiable, and warranted under the language of said ordinance. The plumbing inspector notified the plaintiff, prior to July 15, 1922, that he would not approve the type of trap known as the "P" trap in said hotel, as the layout of its construction was not at all adapted for that type, because it has to be separately and independently vented in order to prevent siphonage, and that only the drum type, or the "P" trap independently vented to prevent siphonage, could be used for drainage of bath tubs above the first floor of this hotel. In November, 1922, plaintiff appealed from the decision of the plumb-

ing inspector to the board of health. On Nov. 28, 1922, said appeal was considered by that board and denied, and the plumbing inspector was sustained in his construction of the provisions of said ordinance. No hotel in the City of Augusta has been permitted by the inspector or his predecessors in office to install a "P" trap, except on the first floor. The drum trap is the best type for draining bath tubs on all floors of hotels, and is more sanitary than the "P" trap. If this hotel with the present layout is equipped with the "P" trap, there will be siphonage and the hotel rendered unsanitary. The drum trap is required by progressive cities throughout the country.

The plaintiff introduced much evidence tending to show that the "P" trap is a suitable and approved trap, that it is approved by architects and mechanical engineers, and if installed in this hotel, according to the plans and specifications prepared by its architect and engineer, it will be fully sanitary. Plaintiff also introduced evidence tending to show that the modern practice is to use the "P" trap in large buildings and hotels, its use being preferred to that of the drum trap, and that the "P" trap is self-cleansing and can be cleaned out when stopped up. The defendants introduced evidence to the effect that the drum trap is more accessible than the "P" trap, and therefore more easily cleaned when stopped up; that it is not unusual for the "P" trap to become stopped up; that the "P" trap that is not separately and independently vented from the crown is dangerous; because it will cause sewer gas and is liable to siphon; that the plans for installation of "P" traps in this building do not provide for separate and independent vents; that the inspector required plaintiff to install drum traps, because it had been the custom in Augusta since he had been in office to use that type, and because he thinks the drum trap far superior to the "P" trap for tubs, especially in a concrete building where the tub is placed in the floor; that the city ordinance requires each fixture to have a back vent; that there are two troubles in the layout which they are putting in this hotel, one of which is he has one four-inch stack extending the entire length of the building, and has fourteen or sixteen bathtubs placed on that stack without back vents, the other of which is that on one side of the "P" trap there are thirty-six inches and on the other side three feet and ten inches; and that the

above construction is not safe and sanitary, as it would likely siphon in case all the tubs were in operation at one time. The plumbing inspector admitted that the " P " trap, properly installed, is as good as the drum trap.

The trial judge granted an injunction, and to this judgment defendants excepted.

*Archibald Blackshear,* for plaintiffs in error.

*J. S. Watkins, C. H. & R. S. Cohen,* and *McElreath & Scott,* contra.

HINES, J.   (After stating the foregoing facts.)

1.   The defendants insist that the plaintiff had a complete and adequate remedy at law. The ordinance of the City of Augusta makes the plumbing inspector " the judge of the quality of the material and workmanship " employed in the erection of buildings in that municipality. This ordinance further provides that should any difference of opinion arise between the inspector and a builder, an " appeal must be made at once, in writing, to the Board of Health, stating full particulars of disputed points clearly, and copy of same furnished the Inspector of Plumbing in six hours; otherwise his judgment will govern." Under this provision of this ordinance, the defendants assert that a complete and adequate remedy at law by appeal is furnished the builder to review and reverse any judgment of the inspector in passing upon his material and workmanship. They further contend that the builder could correct by certiorari any adverse ruling to him in these matters, under the general law providing for that method of reviewing the judgments of inferior judicatories. Civil Code (1910), § 5183. They further contend that the plaintiff resorted to the remedy of appeal from the inspector to this board, and that he is concluded by the judgment rendered against him by this board. The soundness of this contention depends upon whether the action of the inspector, and of the board of health on appeal from his judgment in these matters, is ministerial, or judicial or quasi-judicial in character. The determination of what is a ministerial or administrative duty and what is a judicial function is often a matter of extreme difficulty. The fact that the inspector is made the judge of the material and workmanship in a building, and the fact that provision is made for appeal from his decision to the board of health, do not of themselves constitute the acts of either

judicial functions. The character of these acts, rather than the names given to them, determines whether they are administrative orders, or judicial or quasi-judicial decisions. To make a proceeding judicial there must be provision for trial, including notice and an opportunity to be heard, the introduction of evidence, and right of argument. The ordinance in question does not provide for any hearing before the inspector, or the board of health. No machinery for trial is provided. The action of both the inspector and the board is essentially ex parte. The rulings of the inspector in these matters are administrative orders. The appeal provided for is one from such orders, and not from judgments proper. It follows that the board of health does not review, in passing upon these rulings of the inspector, the judgments of any judicial tribunal. The board of health is not an appellate judicial tribunal. In reviewing the acts of the inspector, this board acts only in an administrative or ministerial capacity. The party aggrieved by a ruling of the inspector would have to resort to this ministerial remedy before he would have a standing in a court of equity; but such resort to this remedy is not one to a judicial tribunal by whose judgment he will be bound. For a full discussion of what constitutes judicial or quasi-judicial action, see *City of Atlanta* v. *Blackman Health Resort,* 153 *Ga.* 499 (113 S. E. 545). As to what constitutes ministerial or administrative rulings, see a full discussion in *Daniels* v. *Commissioners of Pilotage,* 147 *Ga.* 295 (93 S. E. 887). So we reach the conclusion that the board of health, in acting upon an appeal from a ruling of the plumbing inspector under this ordinance, does not act as a judicial tribunal, and that its action on such an appeal is not a judicial or quasi-judicial judgment by which the appellant is concluded.

2. The defendants further contend that the trial judge erred in granting a temporary injunction, because the plumbing inspector was acting within the scope of his duties, and was exercising a discretionary power lodged in him by this ordinance, with which the court should not interfere, unless fraud or corruption was shown, or unless the power or discretion of the officer was being manifestly abused to the oppression of the plaintiff. We concede that public officials, when acting within the scope of their duties and in the exercise of discretionary powers, should not be interfered with by the courts, unless fraud or corruption is shown

or their power or discretion is manifestly abused to the injury and oppression of the citizens. *Hudspeth* v. *Hall,* 113 *Ga.* 4, 7 (38 S. E. 358, 84 Am. St. R. 200). Was the inspector acting within the scope of his duties and in the discharge of a discretionary power when he refused to permit the plaintiff to install " P " traps in this building, and required him to install drum traps? The answer depends upon the proper construction of the ordinance under which he was acting. . This ordinance makes this inspector " the judge of the quality of the material and workmanship " employed in buildings erected in Augusta, and likewise empowers him to construe the meaning of the plumbing ordinances of that city. Making the inspector judge of the quality of the material to be used in buildings in Augusta does not confer on him the power to prescribe the kind of material to be so used. If the material which the owner proposes to use is reasonably suited to secure the safety, welfare, and health of the community, the inspector can not, under this ordinance, reject such material and require the owner to use other material, though the latter may be better than that proposed to be used by the owner. In the absence of a valid statute or ordinance, the inspector could not require the owner to use brick instead of wood, granite instead of brick, or marble instead of granite, if the material of the owner's choice is reasonably suited for the building proposed to be erected. So if " P " traps are reasonably suited to drain the bath tubs of a hotel and to secure the safety, comfort, and health of the guests thereof and of the public, the building inspector could not reject such traps and require the builder or contractor to put in drum traps, although in his opinion the latter was the best type. To confer upon such officer the right to select the material of the building would unreasonably and arbitrarily invade the rights of the owner, and render the ordinance conferring such power unreasonable and void. As municipal ordinances, founded on general powers in a city charter, must be reasonable, to be valid and enforceable (*Toney* v. *Macon,* 119 *Ga.* 83, 46 S. E. 80; *Mayor &c. of Savannah* v. *Cooper,* 131 *Ga.* 670, 63 S. E. 138; *Atlantic Postal Tel. Co.* v. *Savannah,* 133 *Ga.* 66, 65 S. E. 184; *Mayor &c. of Shellman* v. *Saxon,* 134 *Ga.* 29, 67 S. E. 438, 27 L. R. A. (N. S.) 452); the courts will so construe them as to make them reasonable when this can be done. Putting the above construction on

this ordinance makes it reasonable and valid. The plaintiff, however, does not attack this ordinance as void for unreasonableness. He attacks the inspector's administration of it as unreasonable. An ordinance may be unreasonably administered to the injury of another, in which case its administration becomes void. *Loeb* v. *Jennings,* 133 *Ga.* 796 (67 S. E. 101, 18 Ann. Cas. 376). The courts will enjoin the unreasonable and arbitrary administration of a reasonable and valid ordinance.

In the instant case the plumbing inspector admitted that " P " traps for draining bath tubs, when properly installed, were as good as drum traps. In view of this fact his action in rejecting the use in this hotel of " P " traps was an unreasonable and arbitrary administration of the ordinances under which be was acting. But it is insisted that these " P " traps were being improperly installed in this building; and that the plumbing inspector, for this reason, could rightfully reject their use. It is sufficient to say that the inspector could not reject a proper appliance because it was being improperly installed. He could have prohibited improper installation, but this power would not give him the right to reject proper appliances. Furthermore, his decision on this question, if arbitrary and unreasonable, would not bind the owner. There was evidence authorizing the court to find that these " P " traps were being properly installed. If so, the owner of this building or the contractor could not be deprived of his property right to have these appliances used, if they were proper appliances and were being properly installed. It becomes at last a question for decision by the courts whether the inspector's administration of this ordinance was arbitrary and unreasonable; and judicial inquiry into ths matter can not be precluded by any decision made by the inspector.

3. Under the pleadings and the evidence, the trial judge did not err in granting a temporary injunction in this matter.

*Judgment affirmed. All the Justices concur.*